UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DeANDRE WILLIAMS,

                              Plaintiff,

        -against-                                          9:11-CV-0601 (LEK/TWD)

P. BAKER, CANDY ATKINSON,
N. SMITH, DR. ADAM,
DR. SCHNOYER, FACTO,
W. SEYMOUR,

                              Defendants.

_____

## MEMORANDUM-DECISION and ORDER

## I.      INTRODUCTION

        In this *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, Plaintiff

DeAndre Williams ("Plaintiff"), an inmate in the custody of the New York Department of

Correctional Services ("DOCS"),[1] alleges that Defendants violated his constitutional rights during

his confinement at Upstate Correctional Facility ("Upstate").  Dkt. No. 1 ("Complaint").  The

Complaint, which is 315 pages long including exhibits, describes myriad incidents occurring over a

six-year period.  Currently before the Court is Defendants' Motion to dismiss pursuant to Rule 12(b)

of the Federal Rules of Civil Procedure.  Dkt. No. 36 ("Motion").  Plaintiff has opposed the Motion.

Dkt. No. 39 ("Response").  For the reasons that follow, Defendants' Motion is granted in part and

denied in part.

_____

[1] On April 1, 2011, DOCS merged with the Division of Parole to form the Department of
Corrections and Community Supervision ("DOCCS").  The events giving rise to Plaintiff's
Complaint occurred before the merger and the Court will therefore refer to the agency by its former
name.

## II.    BACKGROUND

Because of the wide-ranging nature of Plaintiff's claims and because of the factually-detailed

nature of the exhibits submitted along with his Complaint, the Court does not provide an

independent and comprehensive background statement.  See Compl.; Dkt. Nos. 1-1 to -3.  Instead,

in the interests of judicial economy, the Court provides factual background as necessary in each Part

*infra* to contextualize and resolve the relevant issue.  For a complete statement of the facts,

reference is made to the Complaint.

## III.    LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  Such a

determination "requires the reviewing court to draw on its judicial experience and common sense."

Iqbal, 556 U.S. at 679 (citation omitted).  A court must accept as true the factual allegations

contained in a complaint and draw all inferences in favor of a plaintiff.  See Allaire Corp. v.

Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint may be dismissed pursuant to Rule

12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is

plausible on its face."  Twombly, 550 U.S. at 570.  Plausibility requires "enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the alleged misconduct]."  Id. at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted

unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "[T]he pleading standard

Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at

555).  Where a court is unable to infer more than the mere possibility of the alleged misconduct

based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the

action is subject to dismissal.  See id. at 678-79.

Courts are "obligated to construe a *pro se* complaint liberally."  Harris v. Mills, 572 F.3d 66,

72 (2d Cir. 2009).  However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.

## IV.    DISCUSSION

### A.  Claim Regarding May 2005 Dental Care

Plaintiff sustained a shotgun-blast injury to his right calf in March 1996.  Dkt. No. 1-2 at 50.

In addition, in 2004, he was diagnosed with either a torn medial meniscus or early osteoarthritis in

his knee.  Id. at 75.  These injuries caused Plaintiff pain and numbness in his right leg.  Id. at 66.  As

a result, Plaintiff wore custom-fit orthotics, including a knee brace and short leg brace, and used a

walking cane.  Id. at 66, 75.

In May 2005, Plaintiff was accused of refusing dental care.  Id. at 80.  Plaintiff argued that

he had not "refused."  Id.  Rather, he argued, his disability prevented him from walking up the stairs

to receive the care.  Id.  The following month, Defendant N. Smith, a nurse administrator at Upstate,

investigated Plaintiff's claim and concluded that Plaintiff was "medically capable of using stairs."

Id. at 60, 82-83.

Construed broadly, these facts assert a claim that Defendant Smith violated Plaintiff's Eighth

Amendment right to receive adequate dental care.  Defendants argue that Plaintiff's Eighth

Amendment claims should be dismissed.  Defendants' Memorandum of law (Dkt. No. 36-1) ("Def.'s Mem.") at 5-9.[2]  For the following reasons, this claim is dismissed without leave to amend.

Claims arising under 42 U.S.C. § 1983 are governed by state statutes of limitations.  Owens v. Okure, 488 U.S. 235, 251 (1989).  In New York, such claims are governed by the general three-year limitations period governing personal injury claims.  Id.  Accrual of a claim, however, is a question of federal law.  Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997).  Under federal law, generally, a claim arising under 42 U.S.C. § 1983 "accrues" when the plaintiff "knows or has reason to know of the injury which is the basis of his action."  Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002).

Here, Plaintiff's claim regarding dental care accrued in May 2005.  He did not file this Complaint until May 31, 2011.  Compl.  Thus, this claim is barred by the applicable statute of limitations.[3]  Therefore, this claim must be dismissed.

Where a *pro se* plaintiff's complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d

---

[2] Citations to page numbers in Defendants' Memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

[3] Plaintiff's claim is not saved by the continuing violation doctrine.  "The continuing violation doctrine is an exception to the normal knew-or-should-have known accrual date.  When the plaintiff brings a Section 1983 claim challenging a discriminatory policy, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) (citations and punctuation omitted). For the continuing violation doctrine to apply, a plaintiff must show that a specific defendant committed allegedly wrongful acts both before and during the statutory time period.  See Gonzalez v. Wright, 665 F. Supp. 2d 334, 350 (S.D.N.Y. 2009).  Here, Plaintiff does not allege that Defendant Smith denied him dental care within the statutory time period.

99, 112 (2d Cir. 2000) (citation omitted).  However, an opportunity to amend is not required where "[t]he problem with [a plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  Id.  Here, the problem with Plaintiff's cause of action is substantive and better pleading will not cure it.  Therefore, this claim is dismissed without leave to amend.

### B. Claim Regarding Neurology Appointment

Plaintiff alleges that on August 27, 2008, he wrote letters complaining that he had been denied an appointment with a neurologist.  Dkt. No. 1-2 at 87, 89.  Plaintiff argues he was denied an appointment because he had, in the past, refused shots and treatment involving needles.  Id.  Defendants have not addressed this claim.  The Court will address it *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2).[4]

Plaintiff's allegations regarding the neurology appointment fail to state a claim because Plaintiff has not alleged the personal involvement of any Defendant.  Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  To prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection between the acts of a defendant and the injuries suffered."  Bass v. Jackson, 790 F.2d 260, 263 (2d

---

[4] The Court notes that it performed an initial screening of Plaintiff's Complaint in its Decision and Order filed October 11, 2011, in the context of resolving Plaintiff's Motion to proceed *in forma pauperis*.  Dkt. No. 15 ("October Order").  While the Court dismissed a number of Defendants and claims in its October Order, it did not address all of the claims that Plaintiff could be construed as having raised in his Complaint.  See id.  As a part of its ongoing duty under 28 U.S.C. § 1915(e)(2), however, the Court conducts a more thorough review at this stage and therefore addresses claims not explicitly discussed or identified in the October Order.  See 28 U.S.C. § 1915(e)(2) ("[T]he court shall dismiss the case *at any time* if the court determines that . . . (B) the action . . . (ii) fails to state a claim on which relief may be granted." (emphasis added))

Cir. 1986). Here, Plaintiff does not state who denied him the neurology appointment. Therefore, this claim is dismissed with leave to amend.

### C. Claim Regarding February 2012 Dental Care

#### 1. Factual Background

In February 2010, Plaintiff had trouble making an appointment with a dentist to treat a gum infection with either a thorough cleaning or antibiotics. Dkt. No. 1-3 at 116. Plaintiff wrote a letter on February 11, 2010, to the dentist, describing pain, bleeding, and loose teeth. Id. Plaintiff told the dentist he would "wait to see" what the dentist would do "before I put a lawsuit in." Id. On October 28, 2010, Plaintiff filed a grievance requesting a periodontist appointment for his gum disease, per the dentist's recommendation. Id. at 115. On November 3, 2010, the Inmate Grievance Resolution Committee ("IGRC") responded that Plaintiff should "first address his concerns to the Dental Department before filing a grievance." Id. at 117. Plaintiff criticized the IGRC for dismissing his grievance rather than helping him schedule an appointment. Id.

On November 29, 2010, an inquiry concluded that Upstate's dental staff was treating Plaintiff properly. Id. at 19. The director of correctional dental services advised Plaintiff that he could see a specialist of his choice, but that he should raise any future concerns with staff at Upstate. Id. On January 19, 2011, the Central Office Review Committee ("CORC") stated that Plaintiff had seen the dentist in December and was approved for a follow-up appointment. Id. at 118. CORC also asserted that Plaintiff's dental care followed state protocols and instructed Plaintiff to follow proper procedures when addressing dental appointments and concerns. Id.

Construed broadly, these facts assert a claim that unnamed individuals violated Plaintiff's Eighth Amendment right to receive adequate dental care. Defendants have not addressed this claim.

The Court will address it *sua sponte* pursuant to 42 U.S.C. § 1915(e)(2).  For the reasons discussed below, this claim is dismissed with leave to amend.

### 2.  Personal Involvement

Plaintiff's allegations regarding the denial of dental care that began in February 2010 do not involve any named Defendant.  As discussed *supra*, to prevail on a § 1983 cause of action against an individual, a plaintiff must show "some tangible connection between the acts of a defendant and the injuries suffered."  Bass, 790 F.2d at 263.  Here, Plaintiff has not shown any such tangible connection.  Therefore, this claim is dismissed.  The Court will address the merits of this claim in the sections below to assess whether Plaintiff should be granted leave to amend.

### 3.  Eighth Amendment Medical Care Claim

#### a.  Legal Standard

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments.  U.S. CONST. amend. VIII.  The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment.  Estelle v. Gamble, 429 U.S. 97, 102-03 (1976).  Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society."  Id. at 102 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1956)) (internal quotation marks omitted).  Thus, the Eighth Amendment imposes on prison officials the duty to "provide humane conditions of confinement" for prisoners.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care.  Id. (citing Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated her Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996); Estelle, 429 U.S. at 104).

### b. Objective Prong

In examining the potential merit of Plaintiff's Eighth Amendment claim, the Court must first determine whether Plaintiff has alleged facts plausibly suggesting that he suffered from a serious medical condition. A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting); accord Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. Chance, 143 F.3d at 702-03.

Here, Plaintiff has alleged facts plausibly suggesting a serious medical condition. Plaintiff's complaints about gum disease, pain, and bleeding teeth describe an urgent condition that produces "degeneration or extreme pain." See Hathaway, 37 F.3d at 66. In Chance, the Second Circuit found

8

that the plaintiff's extreme pain for six months, three deteriorated teeth requiring extraction, and inability to chew food properly were sufficient to establish a serious medical condition. 143 F.3d at 703. Moreover, the Second Circuit in Harrison v. Barkley, 219 F.3d 132, 136-37 (2d Cir. 2000), found that an untreated cavity can qualify as a serious medical condition because of its degenerative effects over time. Here, Plaintiff suffered pain and bleeding gums from periodontal disease—a condition that worsens over time—for months before seeing a dentist. Thus, Plaintiff has alleged facts plausibly suggesting that he suffered from a serious medical condition.

### c. Subjective Prong

Having determined that Plaintiff has alleged facts plausibly suggesting that he suffered from a serious medical condition, the Court must examine whether that condition was met with deliberate indifference. Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" Chance, 143 F.3d at 703 (quoting Hathaway, 99 F.3d at 553). Thus, to establish deliberate indifference, an inmate must prove that: (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. Farmer, 511 U.S. at 837; Chance, 143 F.3d at 702. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. Farmer, 511 U.S. at 835-36; Ross v. Giambruno, 112 F.3d 505 (2d Cir. 1997). An "inadvertent failure to provide adequate medical care" does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06. Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." Id. at 106. In short, "[m]edical malpractice does not

9

become a constitutional violation merely because the victim is a prisoner." Id.; see also Smith, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). However, malpractice that amounts to culpable recklessness constitutes deliberate indifference. Chance, 143 F.3d at 703 (quoting Hathaway, 99 F.3d at 553). Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan." Id. (quoting Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974)).

Here, Plaintiff has not alleged facts plausibly suggesting that his serious medical condition was met with deliberate indifference. Plaintiff complained first in February 2010 and again in October 2010. He saw a dentist in December 2010 and received approval for a follow-up appointment. These facts distinguish this case from scenarios in which courts have found deliberate indifference regarding dental care. For example, in Chance the Second Circuit found deliberate indifference existed where the prison provided unnecessary dental treatment and had ulterior motives for doing so. 143 F.3d at 703-04. In Harrison, the Second Circuit held that a year-long refusal to treat an inmate's tooth cavity unless he consented to extraction of another tooth constituted deliberate indifference. 219 F.3d at 138. Here, unlike in Chance, there were neither unnecessary treatment nor ulterior motives. Plaintiff disagreed with Upstate officials about the procedure by which Plaintiff was to schedule an appointment. This indicates an inadvertent failure to provide adequate care, or alternatively negligence, neither of which constitutes deliberate indifference. See Estelle, 429 U.S. at 105-06. Here, unlike in Harrison, Plaintiff's lack of treatment was not the result of a dentist's insistence on Plaintiff's consent to another, unwanted procedure.

Instead, it was the result of a disagreement over the dentist appointment scheduling procedure. Thus, Plaintiff has not alleged facts plausibly suggesting that his serious medical need was met with deliberate indifference.

<u>d.</u> <u>Leave to Amend</u>

Having examined the objective and subjective prong of Plaintiff's potential Eighth Amendment claim, the Court must determine whether to allow Plaintiff leave to amend this claim. A liberal reading of the Complaint indicates that a valid claim might be stated if leave to amend is granted. As discussed above, Plaintiff has alleged facts plausibly suggesting that he suffered from a serious medical condition. Though Plaintiff does not allege facts plausibly suggesting personal involvement or deliberate indifference, better pleading might cure these defects. Therefore, Plaintiff is granted leave to amend this claim.

**D. Claim Regarding Elevator Pass**

*1. Background*

On January 25, 2007, a neurologist determined that Plaintiff needed to use an elevator due to his physical condition. Dkt. No. 1-2 at 71. However, Plaintiff did not receive an elevator pass. <u>See,</u> <u>e.g.,</u> <u>id.</u> at 90. He fell on a stairway on August 13, 2008, and was carried on a stretcher to the infirmary for evaluation. <u>Id.</u> at 61. Plaintiff experienced back and neck pain. <u>Id.</u> A medical staff member documented the incident and Plaintiff's injuries in an Ambulatory Health Record Progress Note ("AHRPN") and in a call to the central office. <u>Id.</u>

On September 25, 2008, Defendant Smith investigated Plaintiff's grievance about the facility's failure to grant Plaintiff an elevator pass despite the neurologist's order that Plaintiff required one. <u>Id.</u> at 90. After reviewing Plaintiff's chart, Defendant Smith found "no medical

indication" for Plaintiff to receive an elevator pass.  <u>Id.</u>  Defendant Smith stated that the neurologist's order was not binding on Upstate because "[o]utside providers can recommend only." <u>Id.</u>  Defendant Smith noted that Plaintiff had leg braces and a cane for stability.  <u>Id.</u>  Plaintiff appealed Defendant Smith's decision.  <u>Id.</u>  Plaintiff stated that he needed the elevator pass because he had "just [fallen] on the stairs and cannot ambulate on them."  <u>Id.</u>

On November 3, 2008, Upstate granted Plaintiff an elevator pass, noting that Plaintiff was "unable to walk up [and] down stairs."  <u>Id.</u> at 86.  Two days later, Upstate denied Plaintiff's grievance that the medical staff harassed or discriminated against him in previously denying him an elevator pass.  <u>Id.</u> at 91.  In part, the review committee's report stated there was "no medical reason why [Plaintiff] cannot negotiate a flight of stairs" because Plaintiff was seen walking with his cane and brace.  <u>Id.</u>

Construed broadly, these facts assert a claim that Defendant Smith violated Plaintiff's Eighth Amendment right to adequate conditions of confinement.  Defendants have not addressed this claim. For the reasons discussed below, the Court finds that this cause of action is sufficiently well-pleaded to survive *sua sponte* review pursuant to 28 U.S.C. § 1915(e)(2).

### 2. Analysis

#### a.  <u>Standard Governing Eighth Amendment Conditions of Confinement Claims</u>

As discussed *supra*, the Eighth Amendment imposes on prison officials the duty to "provide humane conditions of confinement" to prisoners.  <u>Farmer</u>, 511 U.S. at 832.  In fulfilling this duty, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  <u>Id.</u> (quoting <u>Hudson</u>, 468 U.S. at 526-27).

12

b.  Objective Prong

To satisfy the objective component of an Eighth Amendment conditions of confinement claim, a prisoner must show that the defendant's "act or omission . . . result[ed] in the denial of 'the minimal civilized measure of life's necessities.'"  Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim."  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Here, Plaintiff alleges facts plausibly suggesting that the deprivation of an elevator pass was sufficiently serious.  As in Williams v. Smith, No. 02 Civ. 4558, 2009 WL 2431948, at *11 (S.D.N.Y. Aug. 10, 2009),[5] the totality of Plaintiff's circumstances plausibly suggests that he was denied the minimal civilized measure of life's necessities.  In Williams, a prisoner who was denied an elevator pass: (1) asserted that climbing the stairs caused him pain; (2) had outside specialists recommend he avoid climbing the stairs due to the pain; and (3) chose not to attend physical therapy sessions because doing so required climbing the stairs.  Williams, 2009 WL 2431948, at *11-12.  There, the district court held that one of the defendants was not entitled to summary judgement because the prisoner plaintiff had raised a triable issue of fact regarding the claim.  Id.  Similarly, here Plaintiff: (1) asserted that climbing the stairs caused him pain; (2) had an outside specialist recommend that, due to the pain, he use an elevator rather than climb the stairs; and (3) missed a dental appointment because he could not climb the stairs.  Additionally, Plaintiff fell while attempting to climb the stairs and had to be carried away on a stretcher.  Drawing all inferences in Plaintiff's favor, the Complaint alleges facts plausibly suggesting that climbing stairs was serious enough to state the objective prong of an Eighth Amendment conditions of confinement claim.

_____

[5] The Court provides Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in LeBron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

c.  Subjective Prong

To satisfy the subjective component of an Eighth Amendment conditions-of-confinement claim, a prisoner must allege facts plausibly suggesting that the defendant acted with "deliberate indifference." Wilson v. Seiter, 501 U.S. 294, 302-03 (1991).  A prison official demonstrates deliberate indifference to inhumane conditions of confinement when she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Delays alone in granting prisoners an elevator pass are insufficient to establish deliberate indifference.  See Collier v. Harter, No. 04-CV-6514, 2012 WL 1495366, at *11 (W.D.N.Y. Apr. 27, 2012) (citing Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981)) ("The fact that [the defendant] assessed Plaintiff's need for an elevator pass and initially determined that it was not required for him cannot qualify as deliberate indifference.").[6]  In Collier, the defendants initially denied the prisoner plaintiff an elevator pass because they determined that he medically did not require one.  Id.  The defendants instead provided a number of remedial measures for the prisoner, including "a lower bed permit, a cane, a back brace, . . . medications, and . . . referr[al] to an orthopedic specialist." Id.  The district court held that, in light of the defendants' medical opinions and the other measures taken, the three-month delay until the prisoner eventually received an elevator pass did not indicate the required state of mind to establish that the defendants acted with deliberate indifference. Id.

Here, the denial to Plaintiff of an elevator pass involved more than just a three-month delay.

---

[6] The Court provides Plaintiff with a copy of this unpublished decision.

Plaintiff alleges facts plausibly suggesting that Defendant Smith acted with deliberate disregard for Plaintiff's need for an elevator pass. Defendant Smith's investigation included a review of Plaintiff's chart. When Plaintiff fell on the stairs, medical staff called the central office about the incident and documented Plaintiff's injuries from the fall in an AHRPN. Thus, this information was available to Defendant Smith as she reviewed Plaintiff's chart. Despite this information, she stated that there was no medical indication for Plaintiff to receive an elevator pass. When considered together in the light most favorable to Plaintiff, the allegations plausibly suggest that Defendant Smith knew of Plaintiff's inability to use the stairs and acted with deliberate indifference. Thus, Plaintiff's claim plausibly supports the subjective prong. Therefore, Defendants are directed to respond to this claim.

### E. April 2010 Claims Involving Braces

#### 1. Introduction

Plaintiff filed a grievance on April 30, 2010, alleging retaliation by Defendant Smith, as well as harassment and discrimination by Defendant Smith and Defendant Dr. Adams. Dkt. No. 1-2 at 7-9. Plaintiff alleged that Defendant Adams threatened three times to take away all of Plaintiff's braces if he "keep[s] complaining" and "keep[s] making trouble about the braces." Id. at 7-8. Plaintiff also alleged that Defendant Smith informed Defendant Adams that Plaintiff did not need braces and that Plaintiff was a problem. Id. at 7. Plaintiff alleges that Defendant Adams never physically examined him regarding the problems Plaintiff had with his braces being too short and tight. Id. Additionally, Plaintiff claims that Defendant Adams told him to leave when he asked to be examined for neck and spine pain, at which point Defendant Smith "[was] smiling." Id. at 8.

Construed broadly, these facts assert claims that Defendants Adams and Smith retaliated

against Plaintiff for his grievances and complaints and that Defendant Adams violated Plaintiff's

Eighth Amendment right to adequate medical care. Defendants move to dismiss these claims.

Def.'s Mot. at 3-9. For the reasons discussed below, the Court: (1) denies Defendants' Motion to

dismiss the retaliation claim against Defendant Adams; (2) grants Defendants' Motion to dismiss

the retaliation claim against Defendant Smith with leave to amend; and (3) denies Defendants'

motion to dismiss the Eighth Amendment medical care claim against Defendant Adams.

### 2. Retaliation Claim

#### a. Standard

Retaliation claims find their roots in the First Amendment. See Gill v. Pidlypchak, 389 F.3d

379, 380-81 (2d Cir. 2004). Central to these claims is the notion that in a prison setting, corrections

officials may not take actions that would have a chilling effect upon an inmate's exercise of First

Amendment rights. See id. at 381-383. Because of the relative ease with which such claims of

retaliation can be recited, however, courts have scrutinized retaliation claims with particular care.

See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted:

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on
> the pleadings because they involve questions of intent and are therefore easily
> fabricated. Second, prisoners' claims of retaliation pose a substantial risk of
> unwarranted judicial intrusion into matters of general prison administration. This is so
> because virtually any adverse action taken against a prisoner by a prison official—even
> those otherwise not rising to the level of a constitutional violation—can be characterized
> as a constitutionally proscribed retaliatory act.

Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), overruled on other grounds,

Swierkewicz v. Sorema N.A., 534 U.S. 506 (2002).

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly

suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse

16

action" against the plaintiff; and (3) there was a causal connection between the protected speech and

the adverse action such that the protected conduct was a "substantial or motivating factor" in the

defendants' decision to take action against the plaintiff.   Mount Healthy City Sch. Dist. Bd. of

Educ. v. Doyle, 429 U.S. 274, 287 (1977); Gill, 389 F.3d at 380 (citing Dawes, 239 F.3d at 492).

b.  Defendant Adams

Plaintiff alleges that Defendant Adams retaliated against Plaintiff for filing grievances and

complaints.  Compl. at 8.  Defendants argue that the Court should dismiss this claim because

Plaintiff's allegation is conclusory and speculative.  Def.'s Mot. at 5.  For the reasons discussed

below, the Court denies Defendants' Motion to dismiss the claim against Defendant Adams.

Regarding the first element, Plaintiff alleges that Defendant Adams retaliated against

Plaintiff for filing grievances.  Filing a grievance against prison officials is constitutionally protected

conduct.  Scott v. Coughlin, 344 F.3d 282, 288 (2d Cir. 2003); Graham v. Henderson, 89 F.3d 75,

80 (2d Cir. 1996).  Thus, Plaintiff's conduct was constitutionally protected.

Regarding the second element, the Second Circuit defines "'adverse action' objectively, as

retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from

exercising . . . constitutional rights.'"  Gill, 389 F.3d at 381 (quoting Davis v. Goord, 320 F.3d 346,

353 (2d Cir. 2003), superceded by 320 F.3d 346, 2003 WL 360053 (2d Cir. Feb. 10, 2003))

(emphasis in original).  The Second Circuit has "made clear that this objective test applies even

where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file

grievances and lawsuits."  Gill, 389 F.3d at 381.

Plaintiff has alleged sufficient facts plausibly suggesting that Defendant Adams's threats to

take away Plaintiff's braces constituted an adverse action.  "Under some circumstances, verbal

17

threats may constitute adverse action, depending on their degree of specificity and the context in which they are uttered." Bumpus v. Canfield, 495 F. Supp. 2d 316, 326 (W.D.N.Y. 2007). "Thus, vague intimations of some unspecified harm generally will not rise to the level of adverse action for the purpose of a First Amendment retaliation claim." Id. (citing Bartley v. Collins, No. 95 Civ. 10616, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action."); Alicea v. Howell, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) (holding that the defendant's "alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] d[id] not give rise to a First Amendment retaliation claim"); Cruz v. Hillman, No. 01 Civ. 4169, 2002 WL 31045864, at *7 (S.D.N.Y. May 16, 2002) (finding that an allegation that defendant made statement which "expressed his dislike for inmates who file civil lawsuits, and later came to plaintiff's cell and said 'Green Haven is an open battlefield, so be careful'" was insufficient to state retaliation claim)).

Here, Defendant Adams's threats were more specific than they were general. In Dorsey v. Fisher, 468 F. App'x 25, 27 (2d Cir. 2012), the Second Circuit found that a prison official's conduct did not rise to the level of adverse action because it lacked specificity and did not threaten the prisoner with any physical harm. Unlike the plaintiff in Dorsey, Plaintiff does not allege that Defendant Adams called him names, but rather that he made the specific threat to remove Plaintiff's braces. Defendant Adams is a doctor who knew that Plaintiff relied on his braces for mobility and leg-pain relief while walking. Thus, Defendant Adams's alleged threats plausibly suggest that an inmate of "ordinary fitness" would be deterred from exercising his right to complain about staff misconduct.

18

Regarding the third prong of the retaliation inquiry, several factors may be considered in determining whether a causal connection exists between a plaintiff's protected activity and a prison official's actions.  See Baskerville v. Blot, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).  Those factors include the temporal proximity between the protected activity and the alleged retaliatory act, as well as statements by the defendant concerning her motivation.  Id. (citing Colon, 58 F.3d at 872-73).[7]  "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action."  Id.

Here, Plaintiff's 2008 grievances were not temporally proximate to the alleged adverse action because they predated Plaintiff's interactions with Defendant Adams by two years.  Plaintiff has, however, alleged comments by Defendant Adams that plausibly suggest a causal connection. Plaintiff alleges that Defendant Adams threatened him in order to prevent him from making additional complaints about the braces.  Defendant Adams's alleged threat was to take away Plaintiff's braces if he "keep[s] complaining" and "making trouble about the braces."  This suggests a retaliatory animus.  Thus, Plaintiff's allegations are not wholly conclusory, and plausibly suggest a causal connection.  See Baskerville, 224 F. Supp. 2d at 732-33 (denying a motion to dismiss a retaliation claim where plaintiff raised a sufficient causal connection based on indicia of retaliatory animus and intent, despite no allegation of temporal proximity or prior disciplinary record). Therefore, Plaintiff has stated a plausible retaliation claim against Defendant Adams, and

---

[7] Baskerville describes four factors to consider in determining whether a causal connection exists: (1) the temporal proximity; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) and the defendant's statements.  Baskerville, 224 F. Supp. 2d at 732 (citing Colon, 58 F.3d at 872-73).  The second and third factors, however, apply only in cases where the alleged adverse action is the filing of a false misbehavior report.  Because there is no allegation regarding a false misbehavior report in this case, these factors are not applicable here.

Defendants' Motion to dismiss that claim is denied.

### c.  Defendant Smith

Plaintiff alleges that Defendant Smith retaliated against Plaintiff for his grievances and complaints.  Compl. at 8.  Defendants argue the Court should dismiss this claim because Plaintiff's allegation is conclusory and speculative.  Def.'s Mem. at 5.  For the following reasons, Defendants' Motion to dismiss the claim against Defendant Smith is granted with leave to amend.

As discussed *supra*, Plaintiff's complaints and grievances were protected activity. Plaintiff has not, however, alleged facts plausibly suggesting an adverse action by Defendant Smith. Plaintiff alleges that Defendant Smith called Plaintiff "a problem," told Defendant Adams that Plaintiff did not need braces, and smiled when Plaintiff was asked to leave without being examined for neck or spine pain.  These statements lack the specificity required to elevate them to the level of adverse action.

The facts alleged in the Complaint also fail to establish a causal connection.  The Complaint does not allege facts plausibly suggesting the existence of either of the pertinent Baskerville factors. There is no reference to temporal proximity or to Defendant Smith's own statements regarding motivation.  Though Plaintiff alleges that Defendant Smith called Plaintiff "a problem," this does not indicate a retaliatory animus.  Unlike Defendant Adams's statements that he would take negative actions if Plaintiff's complaints did not stop, Defendant Smith's "problem" comment does not allege any motivation.  Thus, Plaintiff does not state a plausible retaliation claim against Defendant Smith.  Because better pleading might cure Plaintiff's cause of action, the retaliation claim against Defendant Smith is dismissed with leave to amend.

### 3. Eighth Amendment Medical Care Claim

Construed broadly, these facts also might give rise to a claim that Defendant Adams violated Plaintiff's right to receive adequate medical care. Defendants argue that this claim should be dismissed because the allegations are conclusory and insufficient. Def.'s Mem. at 7. For the following reasons, Defendants' Motion to dismiss this claim is denied.

As discussed *supra*, there are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care: (1) the prisoner had a serious medical condition; and (2) the condition was met with deliberate indifference. Caiozzo, 581 F.3d at 72. "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." Smith, 316 F.3d at 183-84.

Here, Plaintiff alleges sufficient facts suggesting that he suffered from a serious medical condition. Plaintiff indicates the nature of his injuries, his worsening conditions, and the difficult effects the conditions have on his daily activities. These describe not only urgent conditions, but also conditions of extreme pain. Thus, Plaintiff satisfies the objective prong that a serious medical condition existed.

Regarding the subjective prong, the Second Circuit does not interpret the Eighth Amendment to require that prisoners receive the same level of medical care as they would receive at a hospital. See Archer v. Dutcher, 733 F.2d 14, 17 (2d Cir. 1984) ("[T]he same standards of medical care cannot be imposed upon a prison as are presumed to be realized at a hospital."). But that lowered expectation does not insulate prison medical staff from all liability. In Archer, a prisoner claimed she suffered a miscarriage after several traumatic and painful

21

experiences—including a jail beating, vaginal bleeding, sharp pains throughout her body, feeling no movement in her womb, and facing seemingly unnecessary disciplinary hearings—because the defendants intentionally delayed her access to proper medical care. Id. at 16. In reversing the district court's grant of summary judgment for the defendants, the Second Circuit found that the plaintiff had raised questions of material fact about whether the defendants delayed emergency medical care to make her suffer. Id. at 16-17. Even though the court recognized that "providing adequate medical care in a prison [is] exacerbated where an inmate is obstreperous and a disciplinary problem," it held that such issues were appropriate for a jury rather than pre-trial dismissal. Id. at 17.

Here, like the plaintiff in Archer, Plaintiff has alleged facts plausibly suggesting Defendants' deliberate indifference. Plaintiff claims not only that Defendant Adams refused to examine him for his neck and spinal pain, but also that Defendant Adams's refusal came after Plaintiff told him about the painful neck problems. Plaintiff accuses Defendant Adams of refusing to examine Plaintiff only after the pain was brought to Defendant Adams's attention. This plausibly suggests a conscious or intentional disregard of Plaintiff's serious medical needs. Therefore, Defendants' Motion to dismiss this claim is denied.

### G. Claims Regarding Grievance to New York State Department of Health

#### 1. Introduction

In June 2010, Plaintiff filed a grievance with the New York State Department of Health. Dkt. No. 1-2 at 2-3. Plaintiff claimed that unnamed individuals refused to give him a new brace or allow him to see another doctor for his neck and spinal pain. Id. at 2. He also accused Defendant Smith of telling an unnamed doctor to operate on the wrong one of Plaintiff's legs and to take away

Plaintiff's wheelchair and crutches.  Id.  Plaintiff also complained of an unnamed sick-call nurse advising him to elevate his feet in order to alleviate knee and feet swelling rather than giving him "medical attention."  Id. at 3.

Construed broadly, these facts assert a claim that unnamed individuals and Defendant Smith violated Plaintiff's right to receive adequate medical care.  Defendants argue that this claim should be dismissed because the allegations are conclusory and insufficient.  Def.'s Mem. at 7.  For the following reasons, Defendants' Motion to dismiss the claims against the unnamed individuals is granted with leave to amend.  However, Defendant Smith is directed to respond.

### 2. Analysis

#### a. Unnamed Individuals

Plaintiff claims that unnamed individuals refused to give him a new brace or allow him to see another doctor for his neck and spinal pain.  Dkt. No. 1-2 at 2.  As discussed *supra*, in order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection between the acts of a defendant and the injury suffered."  Bass, 790 F.2d at 263.  Here, the Complaint does not allege facts plausibly suggesting a tangible connection between the unlawful conduct and any named Defendant.  Therefore, Defendants' Motion to dismiss this claim is granted with leave to amend.

#### b. Unidentified Sick-Call Nurse

Plaintiff claims that an unnamed sick-call nurse failed to give him "medical attention" when she told Plaintiff to elevate his feet in order to alleviate knee and feet swelling.  "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright, 21 F.3d at 501 (quoting Moffitt, 950 F.2d at 885).  To prevail on

a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection between the acts of a defendant and the injury suffered." Bass, 790 F.2d at 263. Here, the Complaint does not allege facts plausibly suggesting a tangible connection between a named defendant and the injury allegedly suffered. Therefore, Defendants' Motion to dismiss this claim is granted with leave to amend.

### c. Defendant Smith

Plaintiff claims that Defendant Smith told a doctor to operate on the wrong one of Plaintiff's legs and take away Plaintiff's wheelchair and crutches. Dkt. No. 1-2 at 2. For the following reasons, the Court finds that Plaintiff has alleged facts plausibly suggesting the objective and subjective prongs of this Eighth Amendment claim.

Regarding the objective prong, Plaintiff complains of worsening, painful problems with "neck and spine cord syrinx [sic] and herniation." Dkt. No. 1-2 at 2. He also complains of a swollen knee and swollen feet. Id. at 3. Considering the totality of these complaints in the light most favorable to Plaintiff, he has alleged facts plausibly suggesting that he suffered from a serious medical condition.

Regarding the subjective prong, Plaintiff's claims are sufficient to suggest deliberate indifference plausibly. Defendant Smith allegedly told a doctor not only to take away Plaintiff's wheelchair and crutches, but also to operate on the incorrect leg. When viewed in the light most favorable to Plaintiff, the allegations plausibly suggest that Defendant Smith (1) knew of Plaintiff's serious medical need and (2) intentionally ignored it. As discussed above, Defendant Smith knew of Plaintiff's need to use ambulatory aids because of his difficulties walking. To recommend that those aids be taken away plausibly suggests a deliberate disregard for Plaintiff's serious medical

24

need.  Moreover, to recommend that Plaintiff have the incorrect leg operated on further suggests a

deliberate indifference.  For these reasons, Defendants' Motion to dismiss this claim is denied.

### H.  October 2010 Claims Regarding Boots, Insoles, and Braces

#### 1.  Background

In October 2010, Plaintiff required new insoles for his orthotic boots to replace his old,

gel-filled arch supports.  Dkt. No. 1-3 at 85.  Plaintiff alleges that he received hard arch supports

instead of new insoles.  Id.  They were painful and caused Plaintiff to fall "a number of times,"

prompting him to file a grievance.  Id.  Upstate responded by notifying Plaintiff that: (1) he would

see Upstate's medical doctor "in the near future"; (2) the insoles issued on January 6, 2010, "should

last a year"; (3) there was no record of gel arch supports being issued; and (4) Plaintiff had refused

the shoe inserts that Defendant Schnoyer ordered for him in October.  Id. at 82, 86.  Plaintiff called

Upstate's response "a lie" because the inserts that Defendant Schnoyer ordered were half-arch

supports rather than the required whole-foot insoles.  Id. at 82.

Plaintiff saw his primary care provider on November 4, 2010, at which time the doctor

ordered bilateral boot insoles for Plaintiff.  Id. at 83.  Upstate's superintendent told Plaintiff he

would receive the inserts as soon as they arrived at the prison.  Id.

In November 2010, Plaintiff accused Upstate of planning to remove his knee brace instead

of having the velcro straps "renewed" after five years of use.  Dkt. No. 1-2 at 4.  Plaintiff

characterized this as harassment and retaliation for writing up the medical staff, and he insisted he

would be in pain and fall without the brace.  Id.

Construed broadly, these facts implicate the Eighth Amendment right to adequate medical

care.  Defendants move to dismiss these claims.  Def.'s Mem. at 7.  For the following reasons, these

claims are dismissed with leave to amend.

### 2. Unnamed Individuals

Plaintiff claims that unnamed nurses: (1) denied him proper medical care by planning to remove his knee brace; and (2) retaliated against him for his complaints and grievances. Here, the complaint does not allege facts plausibly suggesting a tangible connection between the alleged unlawful conduct and any named defendant. Therefore, Defendants' Motion to dismiss these claims is granted with leave to amend.

### 3. Eighth Amendment Medical Care Claim

Construed broadly, these facts assert a claim that Defendant Schnoyer violated Plaintiff's right to receive adequate medical care by ordering the incorrect arch supports. Defendants argue that this claim should be dismissed because the allegations are conclusory and insufficient. Def.'s Mem. at 7. For the following reasons, Defendants' Motion to dismiss this claim is granted with leave to amend.

Regarding the objective prong, Plaintiff complains of difficulty and pain while walking, as well as his need for proper boots and insoles to alleviate his ambulatory difficulties. Considering the totality of these complaints in the light most favorable to Plaintiff, he has alleged facts plausibly suggesting that he suffered from a serious medical condition.

Regarding the subjective prong, Plaintiff's claim that Defendant Schnoyer ordered the wrong type of foot insoles is insufficient to plausibly suggest deliberate indifference. Without more, this claim suggests at most negligence on Defendant Schnoyer's part, which is not enough to defeat Defendants' Motion. See Estelle, 429 U.S. at 106. Even when viewed in the light most favorable to Plaintiff, the allegation is too vague to suggest that Defendant Schnoyer intentionally ignored

Plaintiff's medical need.  If anything, the fact that Defendant Schnoyer ordered replacement foot insoles underscores that he knew of Plaintiff's medical need and acted to treat it.  Therefore, Defendants' Motion to dismiss this claim is granted with leave to amend.

### I.  Claims Regarding Neck Pain

Plaintiff was seen for chronic neck pain on November 4, 2010.  Dkt. No. 1-2 at 29.  He was referred to neurology and treated with medication.  Id.  Plaintiff again complained of neck pain on November 8, 2010, but no report was filed because Plaintiff denied any new injury.  Id.  When Plaintiff was asked on November 10, 2010, about his neck pain, however, he contradicted his previous statement and stated that he had sustained a new injury.  Id.  Plaintiff was not prescribed additional treatment because Plaintiff was already receiving high doses of pain medication and had told the nurse that he was "better now."  Id.  Instead, "[a]n inmate injury report was completed along with a misbehavior report for failing to report an injury promptly and for providing incomplete, false, or misleading information to the nurse."  Id.  Plaintiff called the investigation report "a lie," claiming his neck was "still messed up" and that he had been unable to see anyone or receive proper treatment.  Id.  The superintendent found no evidence of any malfeasance by the medical staff.  Id.

Construed broadly, these facts assert a claim that unnamed individuals violated Plaintiff's right to receive adequate medical care.  Defendants argue that this claim should be dismissed because the allegations are conclusory and insufficient.  Def.'s Mem. at 7.  Plaintiff generally alleges that he was unable to see anyone or receive treatment for his persistent neck pain.  The Complaint does not allege facts plausibly suggesting a tangible connection between the unlawful conduct and any named defendant.  Therefore, Defendants' Motion to dismiss these claims is granted with leave to amend.

**J. Claims regarding Defendants Atkinson and Schnoyer**

*1. Background*

In November 2010, Plaintiff filed two grievances against Defendant Atkinson.  Dkt. No. 1-2 at 23, 32.  One accused Defendant Atkinson of "trying to harass, intimidate, annoy, and deprive" Plaintiff of his medications in retaliation for "writing her up."  Id. at 32.  Plaintiff claimed Defendant Atkinson called him a liar and refused to treat him after he experienced excruciating neck pain.  Id. at 23.

The following month, Plaintiff requested that state officials discipline Defendant Atkinson for racism and conspiracy.  Id. at 35, 36.  Plaintiff accused Defendant Atkinson of being an "outright racist" for "call[ing] people niggers."  Id. at 35.

Plaintiff also accused Defendant Atkinson of conspiring to write false reports and get Plaintiff's medications stopped.  Id. at 36.  In particular, Plaintiff claimed Defendant Atkinson was involving Defendant Schnoyer in taking away Plaintiff's medications.  Id. at 13.  Plaintiff alleged that Defendant Atkinson told Plaintiff he needed to yell his medical issues during sick call.  Id. at 10.  Defendant Schnoyer affirmed that Plaintiff's failure to speak in an "audible tone" would lead to termination of certain medical protocols, including "1:1 medication administration."  Id. at 11.

In November 2010, Defendant Schnoyer discontinued one of Plaintiff's pain medications without ordering alternate pain medication.  Id. at 24.  In December, Defendant Adams prescribed a different medication, but Plaintiff later refused the medication and returned it to the nursing staff. Id.  A grievance investigation by the superintendent revealed that Plaintiff reported no side effects from the cessation of the original medication.  Id.  Plaintiff claimed he "experienced bad side effects," such as the inability to breathe, after taking the new medication.  Id.  Plaintiff said he

therefore returned the new medication, as instructed.  Id.

Broadly construed, these allegations raise the following claims: (1) a retaliation claim against Defendant Atkinson; (2) an equal protection claim against Defendant Atkinson; (3) a conspiracy claim against Defendant Atkinson and Defendant Schnoyer; and (4) an Eighth Amendment medical claim against Defendants Atkinson and Schnoyer.  Defendants move to dismiss the retaliation claim and the Eighth Amendment claim.  Def.'s Mem. at 3-9.  Defendants have not addressed the equal protection or conspiracy claims.  The Court will address those claims *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2).  For the reasons discussed below, the retaliation, equal protection, and Eighth Amendment claims are dismissed with leave to amend and the conspiracy claim is dismissed without leave to amend.

### 2. Retaliation Claim

Plaintiff alleges that Defendant Atkinson retaliated against Plaintiff by trying to take away his medications.  Dkt. No. 1-2 at 32.  Defendants argue that the Court should dismiss this claim because Plaintiff's allegation is conclusory and speculative.  Def.'s Mem. at 5.  Defendants are correct.

Plaintiff alleges that he filed a complaint against Defendant Atkinson.  Dkt. No. 1-2 at 32.  As discussed *supra*, filing a grievance against a prison official is constitutionally protected conduct.  Scott, 344 F.3d at 288.  Viewed in the light most favorable to Plaintiff, the Complaint alleges facts plausibly suggesting that Defendant Atkinson took adverse action against Plaintiff.  The Complaint alleges that Defendant Atkinson refused to provide Plaintiff with medical treatment and filed false reports against him.  Dkt. No. 1-2 at 23, 36.  The Complaint does not, however, allege facts plausibly suggesting any causal connection between the alleged protected conduct and the alleged

adverse actions. Therefore, this claim is dismissed with leave to amend.

### 3. Equal Protection/Discrimination Claim

Construed broadly, these facts also assert a claim that Defendant Atkinson subjected Plaintiff to discriminatory treatment because of his race. For the reasons discussed below, this claim is dismissed with leave to amend.

The Equal Protection Clause provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). The Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005) (quoting LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980)). Governmental action may also violate the Equal Protection Clause where the defendants intentionally treat the plaintiff "differently from others with no rational basis for the difference in treatment." Id. (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). Thus, a plaintiff asserting an equal protection claim must allege facts plausibly suggesting that: (1) he was treated differently from similarly situated individuals; and (2) the defendants treated him differently due to his membership in a suspect class, inhibited his exercise of a fundamental right, acted out of malice, or acted irrationally and arbitrarily.

Here, Plaintiff has not alleged that he was treated differently from any similarly situated individual. Therefore, the equal protection claim is dismissed with leave to amend.

### 4. *Conspiracy Claim*

Plaintiff alleges that Defendants Atkinson and Schnoyer conspired against him. This claim is barred by the intracorporate conspiracy doctrine.

The intracorporate conspiracy doctrine states that employees of a single corporate entity are legally incapable of conspiring together. Bond v. Bd. of Educ., No. 97-CV-1337, 1999 WL 151702, at *2 (W.D.N.Y. Mar. 17, 1999). "This doctrine applies to public entities and their employees." Lee v. City of Syracuse, 603 F. Supp. 2d 417, 442 (N.D.N.Y. 2009) (citations omitted). Although the Second Circuit has recognized the doctrine in the context of 42 U.S.C. § 1985, see Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978); Girard v. 94th & Fifth Ave. Corp., 530 F.2d 66, 72 (2d Cir. 1976), the Second Circuit has not extended the application of the doctrine to conspiracy claims under § 1983. A number of district courts in the Second Circuit have, however, applied the doctrine to § 1983 cases.[8]

In Anemone v. Metropolitan Transportation Authority, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006), the Southern District squarely held that the intracorporate conspiracy doctrine should be applied to § 1983 cases. Like that Court, in the absence of any authority to the contrary, this Court:

will continue to apply the intracorporate conspiracy doctrine to Section 1983

---

[8] See Sebast v. Mahan, No. 09-CV-98, 2009 WL 2256949, at *3 (N.D.N.Y. July 28, 2009); Lee v. City of Syracuse, 603 F. Supp. 2d 417, 442 (N.D.N.Y. 2009); Lukowski v. Cnty. of Seneca, No. 08-CV-6098, 2009 WL 467075, at *3 (W.D.N.Y. Feb. 24, 2009); Perrin v. Canandaigua City Sch. Dist., No. 08-CV-6153L, 2008 WL 5054241, at *2 (W.D.N.Y. Nov. 21, 2008); Rodriguez v. City of New York, 644 F. Supp. 2d 168, 200-01 (E.D.N.Y. Feb. 11, 2008); Crews v. Cnty. of Nassau, No. 06-CV-2610, 2007 WL 4591325, at *12 (E.D.N.Y. Dec. 27, 2007); Little v. City of New York, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007); Clark v. City of Oswego, No. 03-CV-202, 2007 WL 925724, at *7 (N.D.N.Y. Mar. 26, 2007); Malone v. City of New York, No. CV-05-2882, 2006 WL 2524197, at *11 (E.D.N.Y. Aug. 30, 2006); Caidor v. M&T Bank, No. 05-CV-297, 2006 WL 839547, at *11-12 (N.D.N.Y. Mar. 27, 2006).

claims because the doctrine's logic is sound. A civil rights conspiracy requires an agreement between two or more actors to inflict an unconstitutional injury. This 'two or more actors' requirement cannot be satisfied where all of the alleged conspirators are employees of a single entity and acting within the scope of their employment as agents of that entity.

Id. (citation omitted).[9]

Here, Defendants Atkinson and Schnoyer are both DOCS employees. Compl. at 2, 4. Plaintiff's allegations about them involve actions taken in the scope of their employment. Therefore, this claim is barred by the intracorporate conspiracy doctrine and is dismissed without leave to amend.

### 5.  Eighth Amendment Medical Care Claim

Broadly construed, the Complaint asserts an Eighth Amendment medical care claim against Defendants Atkinson and Schnoyer. Defendants argue that this claim should be dismissed because it is too conclusory. Def.'s Mem. at 7. The Court concludes that this claim, as pleaded, is deficient.

Plaintiff alleges that he was deprived of medication but does not identify in his Complaint the condition for which it was prescribed. Thus, the Court cannot analyze whether this claim involves a serious medical condition. Moreover, the Complaint does not allege facts plausibly suggesting that Defendants Schnoyer or Atkinson were deliberately indifferent to Plaintiff's deprivation. At most, the Complaint alleges that Plaintiff would have preferred to keep receiving

---

[9] Even where the intracorporate conspiracy doctrine applies, there is an exception to the doctrine where "individuals pursue personal interests wholly separate and apart from the entity." Orafan v. Goord, 411 F. Supp. 2d 153, 165 (N.D.N.Y. 2006) (citation and quotation marks omitted), vacated and remanded on other grounds, Orafan v. Rashid, 249 F. App'x. 217 (2d Cir. 2007). This exception is generally applied only in excessive force cases. See, e.g., Medina v. Hunt, No. 05-CV-1460, 2008 WL 4426748 (N.D.N.Y. Sept. 25, 2008); Hill v. City of New York, No. 03 CV 1283, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005). Here, Plaintiff does not allege that any of the Defendants engaged in excessive force or that they were pursuing personal interests wholly separate and apart from their DOCS employment. Therefore, the exception is inapplicable.

the original medication.  However, inmates do not have a right to choose a specific type of

treatment.  Veloz v. New York, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004).  More specifically,

"[d]ifferences in opinion between a doctor and an inmate patient as to the appropriate . . .

medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's

serious medical needs."  Wright v. Genovese, 694 F. Supp. 2d 137, 160 (N.D.N.Y. 2010)

(punctuation omitted).  Therefore, this claim is dismissed with leave to amend.

### K.  Claims Regarding Hearing Aid

Plaintiff filed a grievance against Defendant Atkinson regarding a broken hearing aid on

December 24, 2010.  Dkt. No. 1-2 at 33.  Plaintiff claimed that Defendant Atkinson refused to fix

the hearing aid because Plaintiff could use it by holding a broken part to his ear.  Id.  Plaintiff

admitted that Defendant Atkinson had put in a work request the day before.  Id.  An audiologist

examined Plaintiff on January 14, 2011.  Id. at 52.

Construed broadly, these facts assert a claim that Defendant Atkinson violated Plaintiff's

right to receive adequate medical care by refusing to fix Plaintiff's broken hearing aid.  Defendants

argue that this claim should be dismissed because the allegations are insufficient, conclusory, and

appear to be "nothing more than a mere disagreement over the proper medical care."  Def.'s Mem.

at 7-9.  For the following reasons, Defendants' motion to dismiss this claim is granted, but Plaintiff

is granted leave to amend.

In Alster v. Goord, 745 F. Supp. 2d 317, 334 (S.D.N.Y. 2010), the district court held that a

prison was not deliberately indifferent to the prisoner plaintiff's hearing loss, despite providing him

with an uncomfortable hearing aid and delaying distribution of hearing aid batteries.  There, the

court found that the prisoner submitted no evidence that he "was unable to function at [the prison]

. . . because of these alleged deficiencies." Id. (citing Chance, 143 F.3d at 698).  Even though the prison provided an imperfect hearing aid, the facts did not plausibly suggest it hampered or neglected the prisoner's serious medical need.  Id. at 334.  Moreover, the court found that delay in providing batteries was insufficient to "rise to the level of a constitutional violation." Id. (citation and internal quotation marks omitted); see also Fate v. Goord, No. 11 Civ. 7493, 2012 WL 3104884, at *6 (S.D.N.Y. July 31, 2012) (finding no deliberate indifference where, inter alia, the prisoner failed to allege "any facts to support an inference that, with the use of hearing aids, his hearing would still have been impaired to the point that a major life activity was impaired").[10]

Here, like the plaintiffs in Alster and Fate, Plaintiff has not alleged facts plausibly suggesting that the broken hearing aid hampered his ability to hear.  Despite what was no doubt a frustrating situation, Plaintiff could hear when using the hearing aid by holding the broken parts together.  Thus, Plaintiff has not alleged facts plausibly suggesting the objective prong of his Eighth Amendment claim.

Moreover, even assuming Plaintiff had alleged facts plausibly suggesting the objective prong, the Complaint does not allege facts plausibly suggesting that Defendant Atkinson acted with deliberate indifference.  Instead, Plaintiff alleges that Defendant Atkinson submitted a work request to have the hearing aid fixed.  Dkt. No. 1-2 at 33.  Therefore, Plaintiff's Eighth Amendment medical claim against Defendant Atkinson is dismissed with leave to amend.

### L. Claims Regarding Plaintiff's Alleged Milk Allergy

Plaintiff alleges that on January 6, 2011, Defendant Schnoyer explained in a sick call response that Plaintiff had a "positive allergy to milk," and the mess hall subsequently received a new diet slip for Plaintiff.  Dkt. No. 1-3 at 110.  Two weeks later, however, Plaintiff's digestive

---

[10] The Court provides Plaintiff with a copy of this unpublished decision.

34

problems persisted.  Id. at 67.  He filed a grievance stating that his "delicate stomach" was unable to handle macaroni salad and that he had to eat dry cereal because he had digestion problems with milk.  Id.  Plaintiff asked to be evaluated for Crohn's Disease, see a dietitian, and have full Kosher meals.  Id.  In February, an investigation showed that Plaintiff received a "Kosher no milk diet," but it stated that Plaintiff needed to have tests because an allergy to cow's milk was merely suspected. Id. at 69.

Defendant Schnoyer concluded based on test results that Plaintiff was not allergic to milk. Id. at 111.  Plaintiff claimed otherwise, and when milk and milk products reappeared on his meal trays, Plaintiff claimed he was "being forced to starve" because he could not eat those foods.  Id. at 108.  Plaintiff again asked to see a doctor about his milk intolerance.  Id.  In April, the IGRC responded to Plaintiff, stating that his milk allergy testing complied with state corrections protocols and guidelines.  Id. at 109.  The committee reiterated that Plaintiff was negative for IgE casein.  Id. Plaintiff appealed this decision.  Id.

Plaintiff demanded that Defendant Schnoyer see him immediately so that Plaintiff could be "properly tested for a milk allergy."  Id. at 112.  Plaintiff argued that his previous test was not FDA-approved and came with a printed warning that the test "should not be used for diagnosis without confirmation by other medically established means."  Id.  Defendant Schnoyer, however, reaffirmed the validity of the test results, explaining that Plaintiff "may still have a lactose intolerance" despite not having a milk allergy.  Id. at 113.  Defendant Schnoyer stated that the policy for lactose intolerance was to provide Lactaid during meals.  Id.

Broadly construed, these facts assert a claim that Defendant Schnoyer violated Plaintiff's Eighth Amendment right to adequate medical care.  Defendants argue that this claim should be

dismissed because the allegations are insufficient, conclusory, and appear to be "nothing more than a mere disagreement over the proper medical care." Def.'s Mem. at 7-9. The Court concludes that—as pleaded—this claim is deficient.

Plaintiff complains of being allergic to milk and, thus, unable to digest foods containing milk or milk products. Plaintiff's lab test results, however, suggest otherwise. Defendant Schnoyer's initial diagnosis in June 2009 that Plaintiff had a milk allergy was based on a test measuring IgG allergen. This test was not FDA-approved and was less reliable than another type of test that measured IgE casein. The IgG test results even stated that they should not be used for diagnosis and that Plaintiff should undergo the IgE test or other "medically established means." Dkt. No. 1-3 at 143. When Defendant Schnoyer subsequently ran the IgE test on Plaintiff, the results showed no milk allergy. These facts, even in the light most favorable to Plaintiff, do not plausibly suggest that Plaintiff suffered from a serious medical condition. Therefore, Defendants' motion to dismiss this claim is granted with leave to amend.

### M. Claims Regarding Sexual Abuse by Defendant Facto

#### 1. Background

On November 16, 2010, Plaintiff complained of sexual abuse and harassment by Defendant Facto. Dkt. No. 1-2 at 92. Plaintiff claimed that Defendant Facto repeatedly searched him inappropriately by hitting him "between my legs[,] smashing my nutts[,] prostrate[, and] my ass [sic]." Id. Plaintiff claimed that Defendant Facto used such force that it caused injuries, including swollen genitalia, a swollen prostate, and bloody stool and urine. Id. at 98, 103, 105. Plaintiff also claimed that when he attempted to discuss the issue with Defendant Facto, Defendant Facto refused to listen. Id. at 92.

Broadly construed, these allegations raise the following claims: (1) an Eighth Amendment sexual abuse claim; and (2) a general Eighth Amendment claim relying on an allegation of excessive force; and (3) a Fourth Amendment unreasonable search claim.[11]  Defendants have not addressed these claims.  See Def.'s Mem.  The Court will address the claims *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2).  For the reasons discussed below, the Court dismisses the sexual abuse and unreasonable search claims with leave to amend and directs Defendants to respond to the cruel and unusual punishment/excessive force claim.

### 2. Eighth Amendment Sexual Assault Claim

Sexual abuse of a prisoner by a corrections officer may, in some circumstances, violate the prisoner's Eighth Amendment right to be free from cruel and unusual punishment.  For example, "severe or repetitive sexual abuse of an inmate by a prison officer" may be actionable under the Eighth Amendment, as may situations where "no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct."  Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997).  However, courts require allegations of extreme and severe conduct with no conceivable penological purpose before finding that an inmate has stated an Eighth Amendment sexual abuse claim.

Courts considering complaints with allegations similar to Plaintiff's have routinely found them insufficient.  Id. at 860-61 (holding that allegation that correctional officer touched inmate's penis on one occasion and pressed against him sexually on another occasion, while "despicable," was insufficient to state Eighth Amendment claim); Garcia v. Watts, No. 08 Civ. 7778, 2009 WL 2777085 (S.D.N.Y. Sept. 1, 2009) (allegation that guard subjected prisoner to an "ongoing and

---

[11] Although Plaintiff provides little factual elaboration relating to the alleged searches, he does claim that the encounters with Defendant Facto occurred during "searches."

continuous pattern of harassment" that extended "over a year" and, on separate occasions, grabbed prisoner's buttocks and rubbed his penis against prisoner's buttocks insufficient to state Eighth Amendment claim); Sharpe v. Taylor, No. 05-CV-1003, 2009 WL 1743987 (N.D.N.Y. Mar. 26, 2009) (allegation that guard sexually harassed prisoner and fondled his anus insufficient to state Eighth Amendment claim); Montero v. Crusie, 153 F. Supp. 2d 368 (S.D.N.Y. 2001) (allegation that, on several occasions, correctional officer squeezed inmate's genitalia while pat-frisking him did not show sufficiently serious deprivation to establish Eighth Amendment violation, particularly when inmate did not allege that he was physically injured by such conduct); Williams v. Keane, No. 95 Civ. 0379, 1997 WL 527677, at *11 (S.D.N.Y. Aug. 25, 1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmate's genitals during pat frisk failed to state constitutional claim).[12]  Therefore, Plaintiff's Eighth Amendment claim against Defendant Facto is dismissed.  Plaintiff is granted leave to amend because *sua sponte* dismissal without leave to amend is highly disfavored.  See Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983).

### 3. Eighth Amendment Excessive Force/Cruel and Unusual Punishment Claim

While Plaintiff emphasizes the sexualized nature of his encounters with Defendant Facto, the Court notes that the facts alleged support a plausible claim that Defendant Facto repeatedly struck Plaintiff in the groin despite having been told that he was causing injury to Plaintiff, which sounds more in the general realm of an excessive force-based Eighth Amendment claim.

To state a claim for cruel and unusual punishment in violation of the Eighth Amendment, a prisoner must "allege[ ] facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically."  Sims v. Artuz, 230 F.3d 14, 22 (2d Cir.

_____

[12] The Court provides Plaintiff with a copy of these unpublished decisions.

2000).  A plaintiff must show: (1) that the alleged use of force was "objectively sufficiently serious or harmful enough," United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999); and (2) that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline."  Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Mindful of the liberal construction afforded to *pro se* litigants' civil rights suits, the Court directs Defendants to respond to this claim.

### 4.  Fourth Amendment Unreasonable Search Claim

The Fourth Amendment prohibits "unreasonable" searches.  In the prison context, "a search unsupported by probable cause may be reasonable when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." Bd. of Educ. v. Earls, 536 U.S. 822, 829 (2002); Roe v. Marcotte, 193 F.3d 72, 78 (2d Cir. 1999).  Searches of prisoners are constitutional if they are reasonably related to a legitimate penological goal and are conducted in a reasonable manner.  See Frazier v. Ward, 528 F. Supp. 80, 81 (N.D.N.Y. 1981). Here, Plaintiff has not alleged facts plausibly suggesting that Defendant Facto's search was not related to a legitimate penological goal.  Therefore, this claim is dismissed with leave to amend.

### N.  Claims Regarding Cell Search by Defendant Facto

#### 1.  Background

Plaintiff alleges that Defendant Facto and three other corrections officers "wrecked" his cell by stomping mustard packets onto his legal work and ripping his magazines.  Dkt. No. 1-2 at 92. Plaintiff claimed that pictures of his daughter were taken during the search.  Id.  Plaintiff told the superintendent that "I'm not going to stand for this" and that "It's [going] to be hell!"  Id.  A subsequent investigation by the superintendent found no evidence to support the allegations of staff

misconduct.  Id. at 101.  In particular, the superintendent noted that Plaintiff provided no "additional information and . . . no witnesses," while the corrections officers contradicted Plaintiff's claims by denying that the incident happened as Plaintiff described.  Id.

Broadly construed, these allegations raise the following claims: (1) a Fourth Amendment unreasonable search claim; (2) a due process claim regarding the confiscated property; (3) a First Amendment access to courts claim regarding the defaced legal work; and (4) a retaliation claim. Defendants have addressed only the retaliation claim.  Def.'s Mot. at 4-5.  The Court will address the other claims *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2).  For the reasons discussed below, the Court dismisses these claims with leave to amend only the access-to-courts claim.

### 2.  *Fourth Amendment Unreasonable Search Claim*

Prisoners cannot assert Fourth Amendment claims regarding cell searches, even where the search is retaliatory or arbitrary.  DeMaio v. Mann, 877 F. Supp. 89, 95 (N.D.N.Y. 1995) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights."), aff'd, 122 F.3d 1055 (2d Cir. 1995).  Therefore, Plaintiff's Fourth Amendment claim against Defendant Facto regarding the cell search is dismissed without leave to amend.

### 3.  *Due Process Claim*

"[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533 (1984) (emphasis omitted).  "[C]onfiscation . . . [does] not constitute a Fourteenth Amendment violation for loss of property because of the availability of state court post-deprivation remedies" in the New York Court of Claims.  Koehl v. Dalsheim, 85 F.3d 86, 88 (2d

Cir. 1996); accord Jackson v. Burke, 256 F.3d 93, 96 (2d Cir. 2001); see also Parratt v. Taylor, 451

U.S. 527, 544 (1981) ("Although the state remedies may not provide the respondent with all the

relief which may have been available if he could have proceeded under § 1983, that does not mean

that the state remedies are not adequate to satisfy the requirements of due process."), overruled in

part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986).  Therefore, Plaintiff's due

process claim against Defendant Facto is dismissed without leave to amend.

### 4.  First Amendment Access-to-Courts Claim

"A prisoner has a constitutional right of access to the courts for the purpose of presenting his

claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative

obligations to assure."  Washington v. James, 782 F.2d 1134, 1138 (2d Cir. 1986) (citing Bounds v.

Smith, 430 U.S. 817, 821-23 (1977)).  This right of access, however, guarantees a prisoner "no more

than reasonable access to the courts."  Herrera v. Scully, 815 F. Supp. 713, 725 (S.D.N.Y. 1993)

(citing Pickett v. Schaefer, 503 F. Supp. 27, 28 (S.D.N.Y. 1980)).  To state a claim for denial of

access to the courts, a plaintiff must allege facts plausibly suggesting that: (1) the defendant acted

deliberately and maliciously; and (2) the plaintiff suffered an actual injury.  Lewis v. Casey, 518

U.S. 343, 353 (1996); Howard v. Leonardo, 845 F. Supp. 943, 946 (N.D.N.Y. 1994).  Here, Plaintiff

has not alleged that he suffered any actual injury as a result of mustard packets being stomped into

his legal work.  Therefore, the First Amendment access-to-courts claim against Defendant Facto is

dismissed with leave to amend.

### 5.  Retaliation Claim

Prisoners cannot assert retaliation claims against correction officers regarding cell searches.

Courts have phrased the rationale for this rule in different ways.  Some district courts in the Second

Circuit have found that, at minimum, correction officers are "entitled to qualified immunity on a claim of . . . retaliation relating to cell searches, since it is not well-settled that cell searches can be the subject of a . . . retaliation . . . claim." Jones v. Harris, 665 F. Supp. 2d 384, 398 (S.D.N.Y. 2009). Other courts have gone further, holding outright that "retaliatory searches are not actionable under § 1983." Lebron v. Selsky, No. 05-CV-0172, 2010 WL 1235593, at *5 (N.D.N.Y. Mar. 31, 2010) (collecting cases).[13] The Court need not weigh in on this uncertain legal area. Instead, because amendment to replead this claim would be futile under either rationale, Plaintiff's retaliation claim against Defendant Facto regarding the cell search is dismissed without leave to amend.

### O. Claims Against Defendants Seymour and Baker

#### 1. Background

On January 22, 2011, Plaintiff accused Defendant Seymour of writing "a phoney ticket" in retaliation for: (1) Plaintiff's "refus[al] to masturbate or show her my private [and] freak ass"; and (2) Plaintiff's refusal to return the addresses of Defendant Seymour and her friends. Dkt. No. 1-3 at 45. Plaintiff stated that Defendant Seymour gave him the addresses. Id. The allegedly false misbehavior report charged that Plaintiff refused to return a cup when asked. Id. Plaintiff alleges that Defendant Seymour had told him he could keep the cup and refused to respond when he called after her five times attempting to return the cup. Id. After this incident, Defendant Baker moved Plaintiff to a new cell. Dkt. Nos. 1-2 at 120; 1-3 at 45. Plaintiff alleges that Defendant Seymour stole his address book in order to force him to return hers. Dkt. No. 1-3 at 45. Plaintiff filed six grievances about this incident, alleging that Defendants Baker and Seymour conspired with one another. Dkt. Nos. 1-2 at 120-123; 1-3 at 41, 45.

---

[13] The Court provides Plaintiff with a copy of this unpublished decision.

Broadly construed, these allegations assert the following claims: (1) a retaliation claim against Defendant Seymour; (2) a retaliation claim against Defendant Baker; (3) a conspiracy claim against Defendants Seymour and Baker; and (4) a due process claim regarding loss of property. Defendants have addressed only the retaliation claim. Def.'s Mem. at 5. For the reasons discussed below, the Court dismisses these claims and only grants Plaintiff leave to amend the retaliation claims.

### 2. Retaliation Claim Against Defendant Seymour

Plaintiff alleges that Defendant Seymour retaliated against him for refusing to engage in sexual behavior by writing a false misbehavior report.

> An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right . . . states a claim under § 1983. A plaintiff alleging retaliatory punishment bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff. The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.

Gayle v. Gonyea, 313 F.3d 677, 681 (2d Cir. 2002) (citations omitted).

Here, the Complaint does not provide enough information to suggest plausibly that Plaintiff's alleged refusal to engage in sexual behavior with Defendant Seymour was a substantial or motivating factor in the decision to discipline Plaintiff. It is not clear when the alleged refusal occurred or whether Defendant Seymour made any comments linking the false misbehavior report to the alleged refusal. Therefore, this claim is dismissed with leave to amend.

### 3. Retaliation Claim Against Defendant Baker

43

Plaintiff claims that Defendant Baker retaliated against him by moving him to a new cell. The Complaint does not allege facts plausibly suggesting that Plaintiff was engaged in constitutionally protected conduct of which Defendant Baker was aware, that the move to the new cell was an adverse action, or that there was any causal connection between any protected conduct and the transfer. Therefore, Plaintiff's retaliation claim against Defendant Baker is dismissed with leave to amend.

### 4. Conspiracy Claim

Plaintiff claims that Defendants Seymour and Baker conspired against him. Dkt. No. 1-2 at 120-23; Dkt. No. 1-3 at 45. As discussed *supra*, this claim is barred by the intracorporate conspiracy doctrine because Defendants Seymour and Baker are both DOCS employees. Compl. at 2, 4. Therefore, Plaintiff's conspiracy claim against Defendants Seymour and Baker is dismissed without leave to amend.

### 5. Due Process Claim

Plaintiff claims that Defendant Seymour stole his address book. Dkt. No. 1-3 at 45. As discussed *supra*, such allegations do not state a due process claim because the New York Court of Claims provides an adequate post-deprivation remedy for alleged unauthorized intentional deprivation of property. Koehl, 85 F.3d at 88. Therefore, Plaintiff's due process claim against Defendant Seymour is dismissed without leave to amend.

## P. Claims regarding Cell Conditions

### 1. Background

The cell to which Plaintiff was transferred was cold, had no running hot water, and had a malfunctioning toilet with "a rag stuffed into it so it would overflow when flushed." Dkt. No. 1-2 at

122; <u>see also</u> Dkt. No. 1-3 at 46.  Upon his transfer, Plaintiff complained about not getting stamps, writing paper, or envelopes for the legal motions he was trying to finish.  Dkt. No. 1-3 at 46.  Three days after transferring to his new cell, Plaintiff complained of still having not received his personal items, such as papers, cosmetics, pictures, and legal work.  Dkt. No. 1-2 at 125.  Plaintiff also complained that he had no clean underwear, toothpaste, or soap.  <u>Id.</u>

Construed broadly, these allegations assert the following claims: (1) an Eighth Amendment conditions-of-confinement claim; (2) a First Amendment access-to-courts claim; and (3) a due process claim regarding loss of property.  Defendants have not addressed these claims.  The Court will address them *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2).  For the reasons discussed below, these claims are dismissed with leave to amend only: (1) the Eighth Amendment claim regarding the temperature in the cell; (2) the Eighth Amendment claim regarding the toilet in the cell; and (3) the access to courts claim.

### 2. *Eighth Amendment Conditions-of-Confinement Claim*

Plaintiff alleges that he was subjected to unconstitutional conditions of confinement in his new cell.  Dkt. No. 1-2 at 122; Dkt. No. 1-3 at 46.  These included cold temperatures, no running hot water, and a malfunctioning toilet.  <u>Id.</u>

As discussed *supra*, to satisfy the objective component of an Eighth Amendment conditions of confinement claim, a prisoner must show that the defendant's "act or omission . . . result[ed] in the denial of 'the minimal civilized measure of life's necessities.'"  <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Rhodes</u>, 452 U.S. at 347).  Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim."  <u>Hudson</u>, 503 U.S. at 9.

Regarding cold temperatures, district courts in this circuit have found that allegations of exposure to cold temperatures for short periods of time, even when combined with a lack of clothing or bedding, are insufficient to state an Eighth Amendment conditions-of-confinement claim. Nelson v. Plumley, No. 9:12-CV-0422, 2013 WL 1121362, at *10 (N.D.N.Y. Jan. 24, 2013) (collecting cases).[14] Here, Plaintiff does not allege that he was deprived of clothing or bedding. Moreover, Plaintiff does not allege how long he was subjected to cold temperatures or how cold the temperature was in his cell. Accordingly, Plaintiff has not alleged facts plausibly suggesting that the temperature in his cell was cold enough to violate the Eighth Amendment. Therefore, the Court dismisses Plaintiff's conditions-of-confinement claim regarding the temperature in his cell with leave to amend.

Regarding the lack of running hot water, the denial of hot water in an inmate's cell does not violate the Eighth Amendment. Graham v. Perez, 121 F. Supp. 2d 317, 323 (S.D.N.Y. 2000). Rather, the lack of hot water is a "[r]outine discomfort." Id. (quoting Rhodes, 452 U.S. at 347). Therefore, Plaintiff's conditions-of-confinement claim regarding the lack of hot water is dismissed without leave to amend.

Regarding the issues with the toilet in Plaintiff's cell, the Complaint does not allege facts plausibly suggesting that these issues rose to the level of unconstitutional conditions of confinement. In Gaston v. Coughlin, 249 F.3d 156 (2d Cir. 2001), the Second Circuit reversed a grant of summary judgment entered in the defendants' favor where a prisoner plaintiff had presented evidence that the area directly in front of his cell was "filled" with human feces, urine, and sewage water for several consecutive days. The Second Circuit stated that it was "unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area

---

[14] The Court provides Plaintiff with a copy of this unpublished decision.

to remain filled with sewage and excrement for days on end." Id. at 166. Other courts considering

protracted exposures to feces or sewage have similarly allowed the claims to proceed to trial. See

Willey v. Kirkpatrick, No. 07-CV-6484, 2013 WL 434188, at *8 (W.D.N.Y. Feb. 4, 2013)

(collecting cases).[15] Where the exposure is not protracted, courts are split as to whether the prisoner

has stated an Eighth Amendment claim. Id. at *9 (collecting cases). Where claims in shorter-

duration cases have survived dispositive motions, they have involved appalling conditions such as a

"feces-covered cell," a "waste-filled cell," or a cell with no working toilet. Id. Here, Plaintiff has

not alleged protracted conditions or conditions as extreme as those in the aforementioned shorter-

duration cases. He alleges that the toilet "had a rag stuffed into it so it would overflow when

flushed." Dkt. No. 1-2 at 122; see also No. 1-3 at 46. He does not allege that the toilet ever actually

overflowed or that the condition persisted. Therefore, this claim is dismissed with leave to amend.

The Court notes that Plaintiff has not alleged that Defendant Baker was aware of any of

these conditions when he transferred Plaintiff to the new cell. The Court also notes that Plaintiff has

not alleged that any named Defendant was responsible for the conditions in the cell. If Plaintiff

amends the claims regarding temperatures or the issues with the cell's toilet, he must allege the

personal involvement of a named Defendant.

### 3. *First Amendment Access-to-Courts Claim*

Plaintiff alleges that he did not receive materials for completing legal motions when he was

transferred to the new cell. Dkt. No. 1-3 at 46. This allegation does not state an access-to-courts

claim because Plaintiff has not alleged any actual injury. See Lewis, 518 U.S. at 353; Howard, 845

F. Supp. at 946. Therefore, this claim is dismissed with leave to amend.

### 4. *Due Process Claim*

---

[15] The Court provides Plaintiff with a copy of this unpublished decision.

Plaintiff alleges that he was deprived of property when he was transferred to the new cell. Dkt. No. 1-2 at 125. This allegation does not state a due process claim because New York's Court of Claims provides an adequate post-deprivation remedy. Koehl, 85 F.3d at 88. Therefore, this claim is dismissed without leave to amend.

### Q. Claims Regarding Issues with Mail

#### 1. Background

Plaintiff wrote to the mail room four times to address problems he was having receiving his mail, which he claimed "started w[ith Defendant] Facto." Dkt. No. 1-2 at 133. Plaintiff alleges that his family would send Plaintiff pictures or "important papers," but that they never arrived with the rest of his mail. Id. at 133, 136. On January 24, 2011, the superintendent acknowledged that Plaintiff's mail had been delivered to the wrong cell, but he said that a housing sergeant had corrected the mistake. Id. at 132. On February 17, 2011, Plaintiff accused Defendant Facto of throwing away his mail. Id. at 109. A subsequent investigation by the superintendent on March 3, 2011, found no evidence to support Plaintiff's allegations. Id. at 131. Instead, the superintendent said the accused officers denied throwing away Plaintiff's mail or—for that matter—handling Plaintiff's mail at any time. Id. Plaintiff, however, called this "a lie and a cover up." Id. He subsequently filed two more grievances that Defendants Facto and Seymour were throwing out his mail on the basis of his race. Dkt. No. 1-2 at 128; Dkt. No. 1-3 at 23. Plaintiff alleged he never received family letters or magazine subscriptions when those Defendants worked. Id.

Construed broadly, these allegations assert the following claims: (1) a First Amendment claim against Defendants Factor and Seymour regarding Plaintiff's mail; (2) a retaliation claim against Defendant Facto; and (3) an equal protection claim. Defendants have not addressed these

claims. The Court will address them *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2). For the following reasons, these claims are dismissed. Plaintiff is granted leave to amend the First Amendment and equal protection claims, but not the retaliation claim.

### 2. First Amendment Mail Claim

Plaintiff alleges that Defendants Facto and Seymour interfered with his mail. "A prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). However, "courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." Id. An isolated incident is usually insufficient to establish a constitutional violation, even where legal mail is involved. Id. Here, Plaintiff alleges only isolated problems with incoming non-legal mail. Therefore, this claim is dismissed. In an abundance of caution and mindful of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to amend.

### 3. Retaliation Claim

Construed broadly, the Complaint may allege that Defendant Facto retaliated against Plaintiff for his complaints to the mail room and to the superintendent by throwing away his mail in February 2011. However, "[c]ourts in this circuit have held that claims of mail tampering do not constitute adverse action." Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010). Because amendment to remedy this defect would be futile, this claim is dismissed without leave to amend.

### 4. Equal Protection Claim

Plaintiff alleges that Defendants Seymour and Facto interfered with his mail on the basis of his race. Dkt. No. 1-2 at 128; Dkt. No. 1-3 at 23. As discussed *supra*, the Equal Protection Clause

"bars the government from selective adverse treatment of individuals compared with other similarly situated individuals." Bizzarro, 394 F.3d at 86 (quoting LeClair, 627 F.2d at 609-10). Here, Plaintiff has not alleged that he was treated differently from any similarly situated individual. Therefore, this claim is dismissed with leave to amend.

### R. Claims Regarding Threat in Letter to Brian Fischer

#### 1. Background

In March 2011, Plaintiff wrote to Brian Fischer, the Commissioner of DOCS, stating Plaintiff was "going to come out of his cuffs and come off the wall and do what he was trained to do and put a stop [] [t]o this perverted shit." Dkt. No. 1-2 at 112. On March 5, 2011, Defendant Baker filed a misbehavior report charging Plaintiff with making threats. Id. On that same date, Plaintiff filed a grievance accusing Defendant Baker of issuing the misbehavior report to retaliate against Plaintiff "due to my complaints against Sgt. Baker and others." Id. at 113. Plaintiff stated that Defendant Baker never investigated the matter as he had asserted he had in the misbehavior report. Id. Plaintiff also stated Defendant Baker should not be the one to investigate the issue because he was mentioned in the complaint letter to Fischer. Id.

Construed broadly, these allegations assert the following claims: (1) a retaliation claim against Defendant Baker; (2) a due process claim against Defendant Baker; and (3) a claim that Defendant Baker failed to conduct a proper investigation. Defendants have addressed only the retaliation claim. The Court will address the other claims *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2). For the reasons discussed below, these claims are dismissed. Plaintiff is granted leave to amend the retaliation and due process claims.

### 2. Retaliation Claim

Plaintiff claims that Defendant Baker filed the misbehavior report in retaliation for Plaintiff's filing of grievances.  Plaintiff has not alleged facts plausibly suggesting a causal connection between his grievances and Defendant Baker's misbehavior report.  See Gayle, 313 F.3d 677, 681.  Plaintiff has not alleged temporal proximity or any comments by Defendant Baker concerning his motivation.  Moreover, it appears from the facts alleged in the Complaint that Plaintiff did, in fact, violate prison rules by making a threat in his letter.  Therefore, this claim is dismissed.  Mindful of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to amend.

### 3. Due Process Claim

Broadly construed, the Complaint alleges that Defendant Baker violated Plaintiff's right to due process by filing a false misbehavior report.  In the procedural due process context, the Second Circuit has held that while a prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," he *does* have "the right not to be deprived of a protected liberty interest without due process of law."  Freeman, 808 F.2d at 951.  However, where: (1) a prisoner is falsely accused of violating disciplinary rules; and (2) a hearing is held on the allegedly false charges that comports with the procedural due process standards set forth by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974); and (3) any resulting guilty finding is based on "some evidence"; then (4) the correctional officer's filing of unfounded charges does not give rise to procedural due process liability.  Freeman, 808 F.2d at 953-54.  Here, Plaintiff does not allege that he was denied due process in any disciplinary hearing that stemmed from Defendant Baker's misbehavior report.

Therefore, this claim is dismissed.  However, once again mindful of Plaintiff's *pro se* status, the Court grants Plaintiff leave to amend.

### 4.  Right to Investigation

Broadly construed, the complaint alleges that Defendant Baker violated Plaintiff's rights by failing to conduct a proper investigation.  "There is . . . no constitutional right to an investigation by government officials and no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."  Lewis v. Gallivan, 315 F. Supp. 2d 313, 317 (W.D.N.Y. 2004) (internal quotation marks omitted).  Therefore, this claim is dismissed without leave to amend.

### S.  Compliance with Rule 8(a) of the Federal Rules of Civil Procedure

As discussed above, the Court has granted Plaintiff leave to amend a number of claims.  Federal Rule of Civil Procedure 8(a) requires that complaints set out "a *short* and *plain* statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a) (emphasis added).  In light of the sprawling nature of Plaintiff's allegations, Plaintiff is cautioned that any amendments that do not comply with Rule 8(a) may be dismissed pursuant to a motion brought under Rule 12(e).

### T.  Qualified Immunity

In their Motion, Defendants argue that Plaintiff's claims are barred by qualified immunity and that the Court should dismiss the Complaint in its entirety on this ground.  Def.'s Mem. at 11.  The doctrine of qualified immunity protects government officials acting in their capacity from liability for civil damages as long as their conduct does not "violate clearly-established rights of which an objectively reasonable official would have known."  Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); see also Martinez v. Simonetti, 202 F.3d 625, 633-34 (2d Cir. 2000).  However, a

defendant may still be protected by qualified immunity if she violated an individual's constitutional rights, but "it was objectively reasonable [for her] to believe that their acts did not violate these clearly established rights." Amore v. Novarro, 624 F.3d 522, 530 (2d Cir. 2010) (quoting Cornejo v. Bell, 592 F.3d 121, 128 (2d Cir. 2010)); see also Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012). The party invoking qualified immunity bears the burden of offering proof that it was objectively reasonable for her to believe that her actions did not violate clearly established rights and that she is entitled to qualified immunity. See Young v. Selsky, 41 F.3d 47, 54 (2d Cir. 1994).

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Williams v. Smith, 781 F.2d 319, 322 (2d Cir. 1986) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982)). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." Sira v. Morton, 380 F.3d 57, 68-69 (2d Cir. 2004); see also Higazy v. Templeton, 505 F.3d 161, 169 n.8 (2d Cir. 2007).

Here, Defendants contend that "[P]laintiff has failed to demonstrate that any . . . [D]efendants violated his constitutional rights. Thus, because [P]laintiff cannot establish a constitutional violation, the [C]omplaint should be dismissed on qualified immunity grounds." Def.'s Mem. at 11. As discussed at great length *supra*, the factual basis for Plaintiff's claims is far from settled and—based on the facts pleaded and allegations raised—the Court is unable to

conclude at this stage in the litigation that any claims not already dismissed with prejudice are barred by the shield of qualified immunity.

### U. Defendant's Request for a Protective Order

In their Motion, Defendants also request "a protective order staying discovery in this matter pending the Court's determination of the instant motion." Id. Because the Court resolves the Defendants' Motion with the instant Memorandum-Decision and Order, the Court concludes that Defendants' request for a stay is now moot. Therefore, this request is denied.

### V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 36) to dismiss for failure to state a claim is **GRANTED in part** and **DENIED in part** consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED in part** consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the following claims are **DISMISSED with leave to amend**: (1) the claim regarding the neurology appointment; (2) the claim regarding dental care in 2010; (3) the retaliation claim against Defendant Smith regarding Plaintiff's leg braces; (4) the Eighth Amendment medical care claims against unnamed individuals regarding new braces and neck and spine pain; (5) the Eighth Amendment medical care claims regarding Plaintiff's insoles and braces; (6) the Eighth Amendment medical care claims regarding neck pain; (7) the retaliation claim against Defendant Schnoyer regarding medication; (8) the equal protection claim against Defendant Atkinson regarding medication; (9) the Eighth Amendment medical care claims against Defendants Schnoyer

and Atkinson regarding medication; (10) the Eighth Amendment medical care claim against Defendant Atkinson regarding the hearing aid; (11) the Eighth Amendment medical care claim against Defendant Schnoyer regarding Plaintiff's alleged milk allergy; (12) the Eighth Amendment sexual abuse claim against Defendant Facto; (13) the Fourth Amendment search of the person claim against Defendant Facto; (14) the access-to-courts claim against Defendant Facto; (15) the retaliation claim against Defendant Seymour regarding the misbehavior report; (16) the retaliation claim against Defendant Baker regarding the transfer to a new cell; (17) the Eighth Amendment conditions-of-confinement claim regarding cold temperatures; (18) the Eighth Amendment conditions-of-confinement claim regarding the toilet in Plaintiff's cell; (19) the First Amendment access-to-courts claim regarding the lack of access to legal materials after being transferred to a new cell; (20) the First Amendment claims against Defendants Facto and Seymour regarding interference with Plaintiff's mail; (21) the equal protection claim against Defendants Facto and Seymour regarding interference with Plaintiff's mail; (22) the retaliation claim against Defendant Baker regarding the misbehavior report; and (23) the due process claim against Defendant Baker regarding the misbehavior report; and it is further

**ORDERED**, that the following claims are **DISMISSED without leave to amend**: (1) the claim regarding the May 2005 denial of dental care; (2) the conspiracy claims; (3) the Fourth Amendment cell search claim against Defendant Facto; (4) the due Process claims regarding confiscation of property; (5) the retaliation claim against Defendant Facto regarding the cell search; (6) the Eighth Amendment conditions-of-confinement claim regarding the lack of hot water; (7) the retaliation claim against Defendant Facto regarding interference with mail; and (8) the claim against Defendant Baker alleging a lack of a thorough investigation; and it is further

**ORDERED**, that Defendants are directed to **RESPOND** to the following claims: (1) the Eighth Amendment conditions of confinement claim against Defendant Smith regarding the elevator pass; (2) the retaliation claim against Defendant Adams regarding Plaintiff's leg braces; (3) the Eighth Amendment medical care claim against Defendant Adams regarding Plaintiff's leg braces; (4) the Eighth Amendment medical care claim against Defendant Smith involving orders regarding operating on Plaintiff's incorrect leg and taking away his wheelchair and crutches; and (5) the Eighth Amendment excessive force claim against Defendant Facto; and it is further

**ORDERED**, that if Plaintiff wishes to amend his Complaint (Dkt. No. 1), he must do so **within sixty (60) days** from the date of filing of this Memorandum- Decision and Order.  Further, any amendment must be consistent with the terms of this Memorandum-Decision and Order  If Plaintiff does not comply with this Memorandum-Decision and Order and file an amended complaint in a timely fashion, however, the Complaint (Dkt. No. 1) will remain the operative pleading and only those claims not dismissed by this Memorandum-Decision and Order will remain; and it is further

**ORDERED**, that any further amended complaint filed as a result of this Memorandum-Decision and Order must include factual allegations describing the role of each named Defendant sufficiently to allow the Court to assess whether a plausible claim has been stated against them; and that it be a wholly integrated and complete pleading, with separately numbered allegations, that does not rely upon or incorporate by reference pleadings previously filed in the action; and it is further

**ORDERED**, that Defendants' request (Dkt. No. 36) for a protective order pending the outcome of their Motion (Dkt. No. 36) is **DISMISSED as moot**; and it is further

**ORDERED**, that the Clerk provide Plaintiff with copies of <u>Williams v. Smith</u>, No. 02 Civ. 4558, 2009 WL 2431948 (S.D.N.Y. Aug. 10, 2009); <u>Williams v. Fisher</u>, No. 02 Civ. 4558, 2003 WL 22170610 (S.D.N.Y. Sept. 18, 2003); <u>Collier v. Harter</u>, No. 04-CV-6514, 2012 WL 1495366 (W.D.N.Y. Apr. 27, 2012); <u>Bond v. Bd. of Educ.</u>, No. 97-CV-1337, 1999 WL 151702 (W.D.N.Y. Mar. 17, 1999); <u>Medina v. Hunt</u>, No. 05-CV-1460, 2008 WL 4426748 (N.D.N.Y. Sept. 25, 2008); <u>Hill v. City of New York</u>, No. 03 CV 1283, 2005 WL 3591719 (E.D.N.Y. Dec. 30, 2005); <u>Fate v. Goord</u>, No. 11 Civ. 7493, 2012 WL 3104884 (S.D.N.Y. July 31, 2012); <u>Garcia v. Watts</u>, No. 08 Civ. 7778, 2009 WL 2777085 (S.D.N.Y. Sept. 1, 2009); <u>Excell v. Fischer</u>, No. 08-CV-945, 2009 WL 3111711 (N.D.N.Y. Sept. 24, 2009); <u>Sharpe v. Taylor</u>, No. 05-CV-1003, 2009 WL 1743987 (N.D.N.Y. Mar. 26, 2009); <u>Eng v. Therrien</u>, No. 04-CV-1146, 2008 WL 141794 (N.D.N.Y. Jan. 11, 2008); <u>Moncrieffe v. Witbeck</u>, No. 97-CV-253, 2000 WL 949457 (N.D.N.Y. June 29, 2000); <u>Holton v. Moore</u>, No. CIV. A.96CV0077, 1997 WL 642530 (N.D.N.Y. Oct. 15, 1997); <u>Williams v. Keane</u>, No. 95 Civ. 0379, 1997 WL 527677 (S.D.N.Y. Aug. 25, 1997); <u>Lebron v. Selsky</u>, No. 9:05-CV-0172, 2010 WL 1235593 (N.D.N.Y. Mar. 31, 2010); <u>Nelson v. Plumley</u>, No. 12-CV-0422, 2013 WL 1121362 (N.D.N.Y. Jan. 24, 2013); <u>Willey v. Kirkpatrick</u>, No. 07-CV-6484, 2013 WL 434188 (W.D.N.Y. Feb. 4, 2013); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED**.

DATED:      March 29, 2013
              Albany, New York

Lawrence E. Kahn
U.S. District Judge