UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEANDRE WILLIAMS,

                                        Plaintiff,
                                                        9:11-CV-0601
v.                                                      (LEK/TWD)

N. SMITH, et al.,

                                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

DEANDRE WILLIAMS, 99-A-0052
Plaintiff pro se
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

HON. ERIC T. SCHNEIDERMAN                        JUSTIN L. ENGEL, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION

       This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff DeAndre Williams, an inmate in the custody of the New York Department of

Corrections ("DOCS"),[1] alleges that Defendants violated his constitutional rights during his

_____
       [1]    On April 1, 2011, DOCS merged with the Division of Parole to form the
Department of Corrections and Community Supervision.  The events giving rise to Plaintiff's

confinement at Upstate Correctional Facility ("Upstate").  (Dkt. No. 1.)  The complaint, which is

315 pages long including exhibits, describes myriad incidents occurring over a six-year period.

Currently pending before the Court is Defendants' motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56.  (Dkt. No. 107.)  For the reasons discussed below, I

recommend that the Court grant Defendants' motion.

## I.      FACTUAL AND PROCEDURAL SUMMARY

At his deposition, Plaintiff testified that a specialist from outside the Upstate facility saw

him regarding his torn right meniscus in 2004.  (Dkt. No. 107-9 at 70:21-25, 71:1-3, 72:3-10.)

Plaintiff testified that the specialist "also said there was a problem with the left knee." *Id.* at

71:3-4.  However, a letter from the specialist attached to the complaint makes no mention of

Plaintiff's left knee.  (Dkt. No. 1-2 at 75.)  Plaintiff testified that he told the specialist that his left

knee was worse than his right knee.  (Dkt. No. 107-9 at 70:22-23.)  The specialist recommended

arthroscopy, but Plaintiff declined.  (Dkt. No. 1-2 at 75.)

Thereafter, a surgeon came to Upstate to see Plaintiff.  (Dkt. No. 107-9 at 71:4-5.)

Plaintiff was transported to that appointment in a wheelchair. *Id.* at 71:15-16.  The surgeon

informed Plaintiff that he was going to operate on Plaintiff's right knee. *Id.* at 71:5-7.  Plaintiff

told the surgeon that he did not "want an operation because this is the problem that I have; I don't

have a torn meniscus, I have jumper's knee" and that his left knee was worse than his right knee.

*Id.* at 71:8-11.  Plaintiff testified that the surgeon did not pay attention to him and was

"determined to operate on the wrong knee." *Id.* at 71:11-13.  Plaintiff testified that Defendant

---

complaint occurred before the merger and the Court will therefore refer to the agency by its
former name.

Nurse Administrator Nancy Smith called the surgeon out of the room to talk. *Id.* at 71:14-15, 72:11-14. Plaintiff testified that he was not present for that conversation, but that "it's obvious" that Defendant Smith told the surgeon to operate on Plaintiff's right leg rather than his left leg. *Id.* at 72:23-73:10. No surgery took place that day. *Id.* at 74:10-20. Plaintiff further testified at his deposition that Defendant Smith "directed the surgeon to write in his report that I don't need the wheelchair and I don't need crutches to get around." *Id.* at 72:17-19.

Defendant Smith declares that she "never at any time advised any doctor at Upstate or any outside specialist that plaintiff have the incorrect knee or leg operated on or that plaintiff have any operation on either knee or leg, whatsoever." (Dkt. No. 107-4 ¶ 38.) She further declares that she "never advised or recommended to any doctor at Upstate or any outside specialist that plaintiff did not need ambulatory aides such as a wheelchair and/or crutches." *Id.* ¶ 39. She declares that, as Nurse Administrator, she does "not make determinations regarding permits for ambulatory aides. Permits of this nature can only be prescribed by a provider and permits of this nature can only be discontinued by a provider." *Id.* ¶ 41.

The complaint alleges that on January 25, 2007, a neurologist from outside the Upstate facility determined that Plaintiff needed to use an elevator due to his physical condition. (Dkt. No. 1-2 at 71; Dkt. No. 107-4 ¶¶ 13-14.) Plaintiff did not receive an elevator pass. *See, e.g.*, Dkt. No. 1-2 at 90. Plaintiff testified at his deposition that he saw doctors at Upstate once or twice a week from January 2007 through August 2008 and discussed his need for an elevator pass "all the time." (Dkt. No. 107-9 at 30:5-14.) He testified that the doctors told him that he did not need an elevator pass. *Id.* at 30:21-25. However, there is no indication in Plaintiff's medical records that he requested an elevator permit from Upstate after receiving the

neurologist's recommendation.  (Dkt. No. 107-4 ¶ 16.)

On March 28, 2008, Plaintiff received a right leg brace to treat foot drop.  (Dkt. No. 108 at 11.[2])  On April 8, 2008, Plaintiff was seen at sick call and the nurse noted that he appeared "steady on [his] feet."  *Id.* at 13.  On June 27, 2008, Plaintiff was seen by orthotics with orders to follow up at the next clinic to receive an adjusted leg brace.  *Id.* at 34.  Plaintiff received a new leg brace on July 25, 2008.  *Id.* at 41.

Plaintiff fell on a stairway on August 13, 2008, and was carried on a stretcher to the infirmary for evaluation.  (Dkt. No. 1-2 at 61; Dkt. No. 108 at 139.)  Plaintiff experienced back and neck pain.  (Dkt. No. 1-2 at 61.)  A medical staff member documented the incident and Plaintiff's injuries in a progress note and in a call to the central office.  *Id.*

As mentioned above, Defendant Smith was the Nurse Administrator at Upstate during the relevant time period.  (Dkt. No. 107-4 ¶ 2.)  As Nurse Administrator, Defendant Smith is not a primary care provider.  *Id.* ¶ 6.  She does not generally treat inmates and cannot prescribe medication or medical devices.  *Id.* ¶¶ 8-9.  She does not have authority to issue medical permits, including elevator permits, without direction from a provider.  *Id.* ¶ 10.

Plaintiff filed a grievance on or about August 28, 2008, complaining that he had not been issued an elevator permit.  (Dkt. No. 1-2 at 90.)  Defendant Smith was assigned to investigate the grievance.  (Dkt. No. 107-4 ¶ 28.)  She reviewed Plaintiff's chart.  (Dkt. No. 1-2 at 90.)  It is not clear precisely what the first level review of the grievance said, but Plaintiff's grievance was denied at the Superintendent's level in a decision that cited Defendant Smith's investigation.  *Id.*

---

[2]    Citations to page numbers in Plaintiff's medical records refer to the page numbers assigned by the Court's electronic filing system.

The denial stated that:

    1.    Grievant is currently housed in lower gallery which requires minimal stair usage. NP Parmer deemed elevator order not indicated. Grievant has cane permit for use when he is ambulating out of his cell for any reason. He also has leg braces for use out of cell for stability. . . .

    3.    Grievant was seen by Dr. Weissman, FHSD, on 9/8/08. No change in elevator order written or indicated.

    4.    Outside providers can recommend only. It is up to the facility provider to determine what, if any, of the recommendations are ordered.

    Grievant has braces and a cane to assist with his ambulation. There is no medical indication at this time for an elevator only order.

*Id.*

Plaintiff appealed the Superintendent's decision. (Dkt. No. 1-2 at 90.) He stated that he needed the elevator pass because he had "just [fallen] on the stairs and cannot ambulate on them." *Id.*

On November 2, 2008, Plaintiff was seen at sick call and requested an elevator permit. (Dkt. No. 108-1 at 11.) This was the first time that Plaintiff's medical record documented any request for an elevator permit. (Dkt. No. 107-4 ¶ 31.)

On November 3, 2008, Upstate granted Plaintiff an elevator pass, noting that Plaintiff was "unable to walk up [and] down stairs." (Dkt. No. 1-2 at 86.) Two days later, the Central Office Review Committee affirmed the Superintendent's decision and denied Plaintiff's grievance. *Id.* at 91. In part, the report stated there was "no medical reason why [Plaintiff] cannot negotiate a flight of stairs" because Plaintiff was seen walking with his cane and brace. *Id.*

Plaintiff filed a series of grievances against non-defendant Nurse Atkinson. *See, e.g.,*

Dkt. No. 107-9 at 46:23-47:6. Sometime after October 25, 2007, Defendant Doctor Richard

Adams began providing services at Upstate one day per week. (Dkt. No. 107-5 ¶ 2-3.) At his

deposition, Plaintiff testified that he saw Defendant Adams three or four times. (Dkt. No. 107-9

at 49:11-50:5, 64:7-65:20.) Plaintiff testified at his deposition that his first interaction with

Defendant Adams occurred when Defendant Adams "[c]all[ed] me in the office and tell me I got

to stop writing grievances on Nurse Atkinson." (Dkt. No. 107-9 at 48:12-15.) At that time,

Defendant Adams prescribed steroids for Plaintiff. *Id.* at 49:13-21.

Plaintiff's medical records show that Plaintiff was issued a medium sized knee sleeve on

February 22, 2010. (Dkt. No. 108-1 at 32.) The same progress note indicates that the sleeve was

the wrong size and was returned to the pharmacy in exchange for a large sized knee sleeve. *Id.*

Plaintiff received the large knee sleeve sometime before May 4, 2010, when a pharmacy tech

called Plaintiff's cell block to confirm that Plaintiff had received it. *Id.* at 39.

Defendant Adams declares that he saw Plaintiff on April 30, 2010, after Plaintiff asked to

see a doctor regarding chronic neck pain. (Dkt. No. 107-5 ¶ 10.) Plaintiff arrived at the clinic

wearing elastic neoprene knee braces. *Id.* Plaintiff indicated that he had metal braces, which he

was not wearing at the visit. *Id.* Plaintiff complained that the braces fit poorly but did not

complain of weakness, giving away, or increased motor difficulty. *Id.* Regarding Plaintiff's neck

pain, Defendant Adams noted that Plaintiff "may benefit better from Baclofen rather than Flexiril

for neurogenic spasms." *Id.* Regarding the braces, Defendant Adams declares that:

> I noted that plaintiff walked with ataxic gait without support gear, i.e.,
> cane, crutch, walker. I noted that plaintiff had no indications of
> arthritic pain and my assessment was that he had some muscular
> defect. I indicated plaintiff should gain support with regular
> strengthening and that plaintiff should be observed for further need
> of increased bracing. As I did not feel that the elastic knee braces

> plaintiff was wearing at the visit were providing any support to plaintiff, I discontinued use of that particular type of brace . . . . I discontinued plaintiff's use of the elastic neoprene knee braces because it was my professional medical opinion that they were not providing him support and therefore not indicated to treat his complaints. I did not, however, take any action to discontinue use of any type of metal knee brace plaintiff may have had, as I am not an orthopedic doctor and I do not prescribe metal knee braces or know how they are fitted.

(Dkt. No. 107-5 ¶¶ 10-11.) Plaintiff testified at his deposition that two or three weeks after this meeting, Defendant Adams took away one of his braces. (Dkt. No. 107-9 at 53:18-22.) Plaintiff further alleges that Defendant Adams called him a "nigger." *Id.* at 53:8.

Plaintiff filed a grievance on April 30, 2010, alleging that Defendant Adams threatened three times to take away all of Plaintiff's braces if he "keep[s] complaining" and "keep[s] making trouble about the braces." (Dkt. No. 1-2 at 7, 8.) Defendant Adams declares that "at no time did I threaten [P]laintiff that I would take away his knee or leg braces if he continued to file grievances and complaints. In fact, I am not aware of any grievances or complaints [P]laintiff may have filed prior to his April 30, 2010 appointment with me." (Dkt. No. 107-5 ¶ 8.)

In the grievance, Plaintiff also alleged that Defendant Smith informed Defendant Adams that Plaintiff did not need braces and that Plaintiff was a problem. (Dkt. No. 1-2 at 7.) Plaintiff alleges that Defendant Adams never physically examined him regarding the problems Plaintiff had with his braces being too short and tight. *Id.* Additionally, Plaintiff claimed that Defendant Adams told him to leave when he asked to be examined for neck and spine pain. *Id*. at 8. At his deposition, Plaintiff testified that Defendant Adams told him in that conversation that "he ha[d] a problem with me filing grievances on Nurse Atkinson." (Dkt. No. 107-9 at 63:15-21.)

In June 2010, Plaintiff filed a grievance with the New York State Department of Health.

(Dkt. No. 1-2 at 2-3.)  Plaintiff claimed that unnamed individuals refused to give him a new brace or allow him to see another doctor for his neck and spinal pain.  *Id.* at 2.  He also accused Defendant Smith of telling an unnamed doctor to operate on Plaintiff's wrong leg and to take away Plaintiff's wheelchair and crutches.  *Id.*

On November 16, 2010, Plaintiff complained of sexual abuse and harassment by Defendant Corrections Officer Facteau.[3]  (Dkt. No. 1-2 at 92.)  Plaintiff claimed that Defendant Facteau searched him inappropriately by hitting him "between my legs[,] smashing my nutts[,] prost[]ate[, and] my ass."  *Id.*  Plaintiff said Defendant Facteau used such force that it caused injuries, including swollen genitalia, a swollen prostate, and bloody stool and urine.  *Id.* at 98, 103, 105.  Plaintiff also claimed that when he attempted to discuss the issue with Defendant Facteau, Defendant Facteau refused to listen.  *Id.* at 92.  At his deposition, Plaintiff testified that Defendant Facteau struck him "on my groin area.  Then, he fondled me from the front to the back, I mean, really fondling me."  (Dkt. No. 107-9 at 87:11-12.)  Plaintiff testified that this caused him "a little pain."  *Id.* at 87: 13-14.  He further testified that the only thing Defendant Facteau said to him was, "This is a proper search."  *Id.* at 84:21-23.

Defendant Facteau declares that he was directed to conduct a pat frisk of Plaintiff on November 16, 2010.  (Dkt. No. 107-6 ¶ 9.)  He declares that the "standards for inspection of an inmate's person allow for contact through the clothing with the genitalia, groin, breast, inner thigh, and buttocks."  *Id.* ¶ 11.  He declares that "such contact is deemed a necessary component of a thorough pat frisk and . . . would have been expected for a pat frisk conducted in 2010."  *Id.*

---

[3]     This Defendant's name is spelled "Facto" in much of the record.  The Court has used the spelling supplied by the Defendant in his declaration filed in support of the motion for summary judgment.  (Dkt. No. 107-6.)

Defendant Facteau declares that he "may have made contact with plaintiff's genitalia and buttocks, as is common procedure. However, I did not 'hit' or 'smash' plaintiff as he alleges or use any force against his genitalia and buttocks or otherwise that would cause any injury." *Id.* ¶ 12.

Plaintiff filed this action on May 31, 2011. (Dkt. No. 1.) Defendants moved to dismiss the complaint. (Dkt. No. 36.) On March 29, 2013, the Court granted the motion in part and denied it in part. (Dkt. No. 62.) The Court dismissed twenty-three claims with leave to amend and eight claims without leave to amend. *Id.* at 54-55. The Court granted Plaintiff sixty days to file an amended complaint. *Id.* at 55. The Court directed Defendants to respond to several remaining claims. *Id.* at 56.

Plaintiff did not file an amended complaint. Accordingly, only five claims remain pending in this action: (1) an Eighth Amendment claim against Defendant Smith regarding the elevator pass; (2) a retaliation claim against Defendant Adams regarding Plaintiff's leg braces; (3) an Eighth Amendment medical care claim against Defendant Adams regarding Plaintiff's leg braces; (4) an Eighth Amendment medical care claim against Defendant Smith involving orders to operate on Plaintiff's incorrect leg and to take away his wheelchair and crutches; (5) an Eighth Amendment excessive force claim against Defendant Facteau. (Dkt. No. 62 at 56.)

Defendants now move for summary judgment of the five remaining claims. (Dkt. No. 107.) Plaintiff has opposed the motion. (Dkt. No. 110.) Defendants have filed a reply. (Dkt. No. 111.)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Id*. at 273.  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 & n.11 (1986).  Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material[4] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

### B.     Legal Standard Governing Motions to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion

---

[4]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968); *accord Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the

plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).

Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72

(2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.   ANALYSIS

### A.   Eighth Amendment Claim Against Defendant Smith Regarding Elevator Pass

Construed broadly, the complaint asserts an Eighth Amendment claim against Defendant

Smith for investigating Plaintiff's grievance regarding Upstate's failure to issue him an elevator

pass. (Dkt. No. 1-2 at 90-91.) Defendants argue that they are entitled to summary judgment of

this claim because Plaintiff has not raised a triable issue of fact that (1) Defendant Smith was

personally involved in denying the elevator permit; and (2) Defendant Smith acted with

deliberate indifference. (Dkt. No. 107-2 at 13-20.[5]) Defendants are correct.

1.   Personal Involvement

Defendants argue that Defendant Smith was not personally involved in the decision to

deny Plaintiff an elevator permit because she merely investigated Plaintiff's grievance regarding

the denial of the permit. (Dkt. No. 107-2 at 14-16.) Defendants are correct.

Under Second Circuit precedent, "'personal involvement of defendants in alleged

---

[5]      Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, a mere linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.  *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam).  In other words, supervisory officials may not be held liable merely because they held positions of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted).  Rather, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).[6]

---

[6]     In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies.  The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories.  Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories.  *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases).  The Second Circuit itself has noted

District courts in this circuit have routinely held that a nurse administrator who investigates a grievance does not become personally involved in the alleged underlying constitutional violation. *DeJesus v. Albright*, No. 08 Civ. 5804 (DLC), 2011 U.S. Dist. LEXIS 23710, at *18-21, 2011 WL 814838, at *5-6 (S.D.N.Y. Mar. 9, 2011);[7] *Gates v. Goord*, No. 99 Civ. 1378 (PKC), 2004 U.S. Dist. LEXIS 12299, at *32-35, 2004 WL 1488405, at *10-11 (S.D.N.Y. July 1, 2004);[8] *Patterson v. Lilley*, No. 02 Civ. 6056 (NRB), 2003 U.S. Dist. LEXIS 11097, at *19-22, 2003 WL 21507345, at *6-7 (S.D.N.Y. June 20, 2003);[9] *Rosales v. Coughlin*, 10 F. Supp. 2d 261, 267 (W.D.N.Y. 1998). Here, Defendant Smith simply investigated Plaintiff's grievance. (Dkt. No. 107-4 ¶ 28.) Thus, Defendant Smith was not personally involved in the alleged constitutional violation. Therefore, I recommend that the Court grant Defendants' motion for summary judgment of this claim.

## 2. Deliberate Indifference

Defendants argue that even if Defendant Smith was personally involved in the alleged constitutional violation, she did not act with deliberate indifference. (Dkt. No. 107-2 at 16-20.)

---

that "*Iqbal* has . . . engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*." *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012). The Second Circuit declined to address the issue in *Reynolds*, however, and has not addressed it since that time. I will assume for the purposes of this motion that *Colon* remains good law.

[7]      Defendants provided Plaintiff with a copy of this unpublished decision with their moving papers. (Dkt. No. 107-3 at 1-12.)

[8]      Defendants provided Plaintiff with a copy of this unpublished decision with their moving papers. (Dkt. No. 107-3 at 24-34.)

[9]      Defendants provided Plaintiff with a copy of this unpublished decision with their moving papers. (Dkt. No. 107-3 at 47-52.)

Defendants are correct.

In fulfilling their duty to "provide humane conditions of confinement," prison officials must ensure, among other things, that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). There are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citation omitted).

Defendants concede for the purposes of the pending motion that Plaintiff's medical conditions were serious. (Dkt. No. 107-2 at 13 n.6.) The issue, then, is whether there is a triable issue of fact that Defendant Smith acted with deliberate indifference. Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need.

15

*Farmer*, 511 U.S. at 835. "Inmates do not have a right to choose a specific type of treatment." *Veloz v. New York*, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004). More specifically, "[d]ifferences in opinions between a doctor and an inmate patient as to the appropriate pain medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's serious medical needs." *Wright v. Genovese*, 694 F. Supp. 2d 137, 160 (N.D.N.Y. 2010) (punctuation omitted).

As Defendants correctly note (Dkt. No. 107-2 at 16-19), the pending case is indistinguishable from *Miller v. Rao*, No. 11-CV-0617 (Sr), 2013 U.S. Dist. LEXIS 170412, 2013 WL 6240672 (W.D.N.Y. Dec. 3, 2013).[10] There, an inmate requested orthotic footwear, which he had received during previous prison terms. *Miller*, 2013 U.S. Dist. LEXIS 170412, at *2. The request was denied at several levels and the inmate was instead provided with arch supporting insoles. *Id.* at *3. The inmate then requested a knee brace and pain medication. *Id.* at *3-4. He was referred to physical therapy and received anti-inflammatory pain medication. *Id.* at *4. Thereafter, the inmate filed a grievance regarding the denial of orthotic footwear. *Id.* at *5. The grievance was forwarded to the nurse administrator for investigation. *Id.* Based on her review of the inmate's medical records, she found that there was "no medical indication for orthotics." *Id.* The nurse administrator reiterated that opinion in her investigation of a later grievance regarding the same issue. *Id.* at *8-9. The inmate filed suit and the district court granted the nurse administrator's motion for summary judgment. *Id.* at *1-2. The court noted that the nurse administrator had played a "limited" role in the inmate's care and that the inmate had received regular medical attention at the facility. *Id.* at *20-21. In light of those facts, the

---

[10] Defendants provided Plaintiff with a copy of this unpublished decision with their moving papers. (Dkt. No. 107-3 at 53-61.)

court found that the inmate's "claims of deliberate indifference to his medical needs can only be viewed as mere disagreement with prison officials about what constitutes appropriate medical care." *Id.* at *21 (punctuation omitted).

Here, as in *Miller*, there is no evidence that Defendant Smith acted with deliberate indifference. Her role was limited to investigating Plaintiff's grievance by reviewing his medical records. (Dkt. No. 107-4 ¶¶ 6-10, 28.) Plaintiff received regular medical attention at Upstate, including seeing doctors once or twice per week from January 2007 through August 2008 (Dkt. No. 107-9 at 30:5-14) and receiving a knee brace (Dkt. No. 108 at 11, 41.) Plaintiff merely disagreed with the facility doctors' decision not to issue him an elevator permit. Therefore, I recommend that the Court grant Defendant Smith's motion for summary judgment and dismiss the Eighth Amendment claim regarding the elevator pass.

### B. Retaliation Claim Against Defendant Adams Regarding Plaintiff's Leg Braces

Plaintiff alleges that Defendant Adams retaliated against him by threatening to take away his braces if he "keep[s] complaining" and "keep[s] making trouble about the braces." (Dkt. No. 1-2 at 7-8.) Defendants argue that they are entitled to summary judgment of this claim because, *inter alia*, (1) Plaintiff's verbal complaints about medical issues are not protected speech; and (2) even if Plaintiff was engaged in protected conduct, there was no causal connection between Plaintiff's speech and the alleged adverse action by Defendant Adams. (Dkt. No. 107-2 at 25-29.) Because I find that Plaintiff has not raised a triable issue of fact regarding any causal connection between his conduct and Defendant Adams' alleged actions, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the retaliation claim against Defendant Adams.

17

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Gill*, 389 F.3d at 381-383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001)).

Plaintiff alleges that Defendant Adams retaliated against him both for verbally

complaining about problems with his braces and for filing grievances against Nurse Atkinson. (Dkt. No. 1-2 at 7-8; Dkt. No. 107-9 at 48:9-49:10.)  Defendants argue that, to the extent that Plaintiff claims that the alleged retaliation was based on Plaintiff's verbal complaints, Plaintiff was not engaged in protected conduct.  (Dkt. No. 107-2 at 26.)  Defendants are correct.  *See Garrido v. Coughlin*, 716 F. Supp. 98, 101 (S.D.N.Y. 1989) (stating that inmate was not engaged in protected conduct when he had "verbal confrontation" with correctional officer).  However, the filing of a grievance against prison officials is constitutionally protected conduct.  *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003);  *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996).  Thus, by alleging that Defendant Adams retaliated against him for filing grievances against Nurse Atkinson, Plaintiff has raised a triable issue of fact that he was engaged in protected conduct.

Defendants next argue that there was no causal connection between Plaintiff's protected conduct and the alleged adverse action by Defendant Adams.  (Dkt. No. 107-2 at 26-28.) Defendants are correct.  Several grievances in which Plaintiff mentions Nurse Atkinson are attached to the complaint in this action, but all of them post-date the time period in which Plaintiff claims that Defendant Adams made comments to him about such grievances.  (Dkt. No. 1-2 at 10, 13-14, 32-33, 35-37, 39-41, 117-18; Dkt. No. 1-3 at 40, 42-43, 88-89, 97-99.)  Plaintiff has not submitted any evidence in opposition to the motion for summary judgment showing that his grievances against Nurse Atkinson preceded his interactions with Defendant Adams. Adverse actions that predate protected conduct cannot form the basis of a retaliation claim.  *See Roseboro v Gillespie*, 791 F. Supp. 2d 353, 368 (S.D.N.Y. 2011) (granting summary judgment for defendant on the basis that his conduct "cannot be retaliatory since it predated the protected

speech"); *Verri v. Nanna*, 972 F. Supp. 773, 788 (S.D.N.Y. 1997) ("[C]learly a plaintiff cannot

base a claim of retaliation upon complained-of-acts that predated the speech.") (punctuation

omitted). Therefore, I recommend that the Court grant Defendants' motion for summary

judgment and dismiss the retaliation claim against Defendant Adams.

### C. Eighth Amendment Medical Care Claim Against Defendant Adams

Plaintiff alleges that Defendant Adams violated his Eighth Amendment right to adequate

medical care by failing to physically examine him regarding the problems he was having with his

braces and by asking him to leave when he asked to be examined for neck and spine pain. (Dkt.

No. 1-2 at 7-8.) Defendants argue that this claim should be dismissed because Plaintiff has not

raised a triable issue of fact that Defendant Adams was deliberately indifferent to Plaintiff's

serious medical needs. (Dkt. No. 107-2 at 22-25.) Defendants are correct.

In cases where a "prisoner has actually received medical treatment, deliberate indifference

will not be found unless the 'medical attention rendered was so woefully inadequate as to amount

to no treatment at all.'" *Gay v. Terrell*, No. 12-CV-2925 (CBA) (VMS), 2013 U.S. Dist. LEXIS

139654, at *45, 2013 WL 5437045, at *19 (E.D.N.Y. Aug. 19, 2013[11]) (quoting *Westlake v.*

*Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).[12]  *See, e.g.*, *Perez v. Hawk*, 302 F. Supp. 2d 9, 21

(E.D.N.Y. 2004) (granting defendants' motion to dismiss where documents attached to the

complaint showed that prisoner was seen by medical staff approximately thirty times over an

---

[11]     LEXIS and Westlaw list different dates for this decision. The Court has used the
date used by LEXIS, which represents the date on which the Report-Recommendation containing
the quoted language was issued.

[12]     Defendants provided Plaintiff with a copy of this unpublished decision with their
moving papers. (Dkt. No. 107-3 at 86-105.)

eighteen-month period, given medication, and tested for various maladies). Here, Plaintiff was

seen by medical staff at Upstate more than 350 times between February 12, 2008, and November

3, 2010. (Dkt. No. 108.) Defendant Adams saw Plaintiff, observed him, suggested changes in

medication, and recommended observation to evaluate further need for bracing. (Dkt. No. 107-5

¶ 10-11.) Although this may not have been the precise treatment Plaintiff wanted, nothing in the

record indicates that the treatment was "so woefully inadequate as to amount to no treatment at

all." Thus, Plaintiff has not raised a triable issue of fact that Defendant Adams was deliberately

indifferent to his serious medical needs. Therefore, I recommend that the Court grant

Defendants' motion for summary judgment of this claim.

### D.    Eighth Amendment Medical Care Claim Against Defendant Smith

In addressing Defendants' motion to dismiss, the Court construed Plaintiff's inclusion of

his June 2010 grievance with the New York State Department of Health as asserting an Eighth

Amendment medical care claim against Defendant Smith for advising the surgeon to take away

Plaintiff's wheelchair and crutches and to operate on Plaintiff's right leg rather than his left.

(Dkt. No. 62 at 22-23.) The Court denied Defendants' motion to dismiss that claim. *Id.* at 24-

25. Defendants now move for summary judgment of the claim, arguing that it is barred by the

statute of limitations and that, even if the claim is not barred, they are entitled to judgment as a

matter of law. (Dkt. No. 107-2 at 20-22.)

The complaint, filed on May 31, 2011, did not specify when Defendant Smith allegedly

advised the surgeon to take away Plaintiff's crutches and wheelchair and to operate on the

"incorrect" leg. (Dkt. No. 1-2 at 2.) Defendants did not assert a statute of limitations affirmative

defense in their answer, filed on July 29, 2013. (Dkt. No. 70.) At Plaintiff's deposition,

conducted on February 28, 2014, Defendants learned that the events allegedly occurred in 2004-2005. (Dkt. No. 107-9 at 1, 72:8-10.) However, Defendants did not move to amend their answer to include a statute of limitations defense. Rather, Defendants asserted that defense for the first time in the pending motion for summary judgment, filed on July 25, 2014. (Dkt. No. 107-2 at 20-21.) As Defendants correctly note, "[w]aiver of affirmative defenses not raised in a defendant's answer is not automatic, and 'as a practical matter there are numerous exceptions.'" *Gilmore v. Gilmore*, 503 F. App'x 97, 99 (2d Cir. 2012) (quoting *Am. Fed. Grp. v. Rothenberg*, 136 F.3d 897, 910 (2d Cir. 1998)). Here, however, the Court declines to decide whether or not one of those exceptions is applicable because Defendants are entitled to judgment on the merits regardless of whether or not they waived their statute of limitations affirmative defense.

As discussed above, a prisoner who alleges that a defendant violated his Eighth Amendment right to adequate medical care must prove, *inter alia*, that the defendant acted with deliberate indifference. *Caiozzo*, 581 F.3d at 72. There is simply no evidence that Defendant Smith consciously and intentionally disregarded Plaintiff's serious medical need. There is no evidence in the record that Defendant Smith instructed the surgeon to operate on the "incorrect" leg or to take away Plaintiff's wheelchair and crutches. Defendant Smith affirmatively declares that she gave no such instructions. (Dkt. No. 107-4 ¶¶ 38-39.) The only "evidence" that the incident occurred as alleged in the complaint is Plaintiff's deposition testimony about what he believes Defendant Smith discussed with the surgeon when she called him out of the room. (Dkt. No. 107-9 at 71:14-73:10.) Speculative testimony with no basis of personal knowledge does not constitute evidence. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988); *Applegate v. Top Assoc., Inc.*, 425

F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay");

*Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made

on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993). Therefore, I

recommend that the Court grant Defendants' motion for summary judgment of this claim.

### E. Excessive Force Claim Against Defendant Facteau

Plaintiff alleges that Defendant Facteau violated his Eighth Amendment rights by using

excessive force. (Dkt. No. 1-2 at 92.) Defendants move for summary judgment of this claim,

arguing that there is no evidence that the force was applied maliciously and sadistically to cause

harm. (Dkt. No. 107-2 at 29-32.) Defendants are correct.

When prison officials are "accused of using excessive physical force in violation of the

Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "In determining whether the use of

force was wanton and unnecessary," the court should evaluate "the need for application of force,

relationship between that need and the amount of force used, the threat reasonably perceived by

responsible officials, and any efforts made to temper the severity of a forceful response." *Id*. at 7

(citation and quotation marks omitted). Not "every malevolent touch by a prison guard gives rise

to a federal cause of action. The Eighth Amendment's prohibition of cruel and usual

punishments necessarily excludes from constitutional recognition *de minimis* uses of physical

force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.*

at 9 (citations and internal quotation marks omitted).

Sexual abuse of a prisoner by a corrections officer may, in some circumstances, violate

the prisoner's Eighth Amendment right to be free from cruel and unusual punishment.  For

example, "severe or repetitive sexual abuse of an inmate by a prison officer" may be actionable

under the Eighth Amendment, as may situations where "no legitimate law enforcement or

penological purpose can be inferred from the defendant's alleged conduct."  However, the

Second Circuit and its district courts require allegations of very extreme and severe conduct with

no imaginable penological purpose before finding that an inmate has stated an Eighth

Amendment sexual abuse claim.  Courts considering complaints with allegations more severe

than Plaintiff's have routinely found them insufficient.  *Boddie v. Schnieder*, 105 F.3d 857, 860-

61 (2d Cir. 1997) (holding that allegation that correctional officer touched inmate's penis on one

occasion and pressed against him sexually on another occasion, while "despicable,"  was

insufficient to state Eighth Amendment claim); *Garcia v. Watts,* No. 08 Civ. 7778, 2009 U.S.

Dist. LEXIS 84697, 2009 WL 2777085 (S.D.N.Y. Sept. 1, 2009) (allegation that guard subjected

prisoner to an "ongoing and continuous pattern of harassment" that extended "over a year" and,

on separate occasions, grabbed prisoner's buttocks and rubbed his penis against prisoner's

buttocks insufficient to state Eighth Amendment claim); *Excell v. Fischer,* No. 9:08-CV-945,

2009 U.S. Dist. LEXIS 88506, 2009 WL 3111711 (N.D.N.Y. Sept. 24, 2009) (allegation that

guard grabbed and squeezed prisoner's penis during pat frisk insufficient to state Eighth

Amendment claim); *Sharpe v. Taylor,* No. 9:05-CV-1003, 2009 U.S. Dist. LEXIS 125251, 2009

WL 1743987 (N.D.N.Y. Mar. 26, 2009) (allegation that guard sexually harassed prisoner and

fondled his anus insufficient to state Eighth Amendment claim); *Eng v. Therrien,* No. 9:04-CV-

1146, 2008 U.S. Dist. LEXIS 99246, 2008 WL 141794 (N.D.N.Y. Jan. 11, 2008) (allegation that

guards touched prisoner's penis, testicles, and rectal cavity during several pat frisks insufficient

to state Eighth Amendment claim); *Morrison v. Cortright,* 397 F. Supp. 2d 424 (W.D.N.Y. 2005) (allegation that correctional officer shone light up inmate's anus, ran his middle finger between inmate's buttocks causing inmate to urinate on himself, and rubbed his penis against inmate's buttocks during strip frisk insufficient to give rise to constitutional claim); *Davis v. Castleberry*, 364 F. Supp. 2d 319, 321 (W.D.N.Y. 2005) (allegation that correctional officer grabbed inmate's penis during pat frisk insufficient to state constitutional claim); *Montero v. Crusie*, 153 F. Supp. 2d 368 (S.D.N.Y. 2001) (allegation that, on several occasions, correctional officer squeezed inmate's genitalia while pat-frisking him did not show sufficiently serious deprivation to establish Eighth Amendment violation, particularly when inmate did not allege that he was physically injured by such conduct); *Moncrieffe v. Witbeck,* No. 97-CV-253, 2000 U.S. Dist. LEXIS 9425, 2000 WL 949457 (N.D.N.Y. June 29, 2000) (allegation that two guards each sexually touched prisoner once during pat frisks insufficient to state an Eighth Amendment claim); *Holton v. Moore,* No. CIV. A.96CV0077, 1997 U.S. Dist. LEXIS 16178, 1997 WL 642530 (N.D.N.Y. Oct. 15, 1997) (prisoner's allegations that guard touched his bare chest; put his hands down his pants, parted his buttocks, and touched his anus; and unzipped his pants and touched his penis insufficient to state Eighth Amendment claim); *Williams v. Keane*, No. 95 Civ. 0379, 1997 U.S. Dist. LEXIS 12665, 1997 WL 527677, at *11 (S.D.N.Y. Aug. 25, 1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmate's genitals during pat frisk failed to state constitutional claim).[13]

There is no evidence here that Defendant Facteau subjected Plaintiff to excessive force of

---

[13] The Court provided Plaintiff with copies of these unpublished decisions in conjunction with its order on Defendants' motion to dismiss. (Dkt. No. 62 at 57.)

either a sexual or nonsexual nature.  Plaintiff has not produced any evidence that what occurred

was anything other than a standard pat-frisk.  Therefore, I recommend that the Court grant

Defendants' motion for summary judgment.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 107) be

**GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam));

28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated: January 26, 2015
      Syracuse, New York

          Thérèse Wiley Dancks
          United States Magistrate Judge